[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 281.]

ROSS, APPELLANT, ET AL., *v.* FARMERS INSURANCE GROUP OF COMPANIES, APPELLEE.

DAVIS, APPELLANT, *v.* FARMERS INSURANCE GROUP OF COMPANIES, APPELLEE.

[Cite as *Ross v. Farmers Ins. Group of Cos.*, 1998-Ohio-381.]

*Motor vehicles—Insurance—Scope of coverage of an underinsured motorist claim—Statutory law in effect at time of entering into contract for automobile liability insurance controls the rights and duties of the contracting parties.*

For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.

(Nos. 97-402, 97-551, 97-2056 and 97-2301—Submitted February 4, 1998—Decided July 1, 1998.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 15865.

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 16378.

_____

Case Nos. 97-402 and 97-551

{¶ 1} On April 23, 1993, appellant, Olivea Ross, was riding as a passenger in an automobile driven by Jessica L. Price. Ross was injured when Price's vehicle collided with another vehicle. The collision was caused by the negligence of Price. Thereafter, apparently in March 1995, Price's insurance carrier paid Ross $100,000, the limit of liability coverage provided under Price's policy, in settlement

of Ross's claim against Price.  Ross, however, claimed to have sustained damages in excess of $100,000.

**{¶ 2}** At the time of the accident, Ross was insured under a policy of automobile liability insurance with appellee, Farmers Insurance of Columbus, Inc. The policy had an effective date of March 1, 1993, and an expiration date of September 1, 1993.  Ross's policy of insurance with appellee included a provision for underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence.  Following the accident, Ross made a claim for underinsured motorist benefits under her policy with appellee.  Appellee denied the claim even though Ross's damages were allegedly in excess of the $100,000 she had received from the tortfeasor's insurance carrier.

**{¶ 3}** On April 21, 1995, Ross filed a complaint[1] against appellee in the Court of Common Pleas of Montgomery County seeking a judicial determination that she was entitled to recover underinsured motorist benefits under her policy with appellee.  On March 28, 1996, the common pleas court granted summary judgment in favor of Ross.  The trial court concluded that Ross's cause of action had accrued on the date of the accident, April 23, 1993.  Accordingly, the trial court held that Ross was entitled to underinsured motorist coverage under the law that was in effect at the time of the accident, *i.e.,* former R.C. 3937.18 and *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809.

**{¶ 4}** On appeal, the court of appeals reversed the judgment of the trial court and remanded the cause to that court with instructions to enter final judgment in favor of appellee.  Specifically, the court of appeals, citing *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323, found that Ross's right to underinsured motorist coverage did not arise until March 1995, when she settled her claim with

---

1.  In her complaint, Ross designated "Farmers Insurance Group of Companies" as the named defendant.  However, appellee, in response to the complaint, noted that "Farmers Insurance of Columbus, Inc." is the proper designation for the insurer.

the tortfeasor's insurance company.  Thus, the court of appeals held that the version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 on October 20, 1994 controlled the determination of whether Ross was entitled to underinsured motorist coverage and that Ross was not entitled to such coverage under the terms of the statute.  Thereafter, the court of appeals, finding its judgment to be in conflict with the judgments of the courts of appeals in *Brocwell v. King* (Oct. 24, 1995), Richland App. No. 95-25, unreported, 1995 WL 768520, and *Heritage Mut. Ins. Co. v. McBee* (Aug. 21, 1996), Summit App. No. 17440, unreported, 1996 WL 470652, entered an order certifying a conflict.  The cause is now before this court upon our determination that a conflict exists (case No. 97-551), and pursuant to the allowance of a discretionary appeal (case No. 97-402).

Case Nos. 97-2056 and 97-2301

{¶ 5} On May 14, 1993, appellant, David Davis, was injured when a motorcycle he was operating was struck by a vehicle driven by Catrina S. Cavey. The accident occurred as a result of Cavey's negligence.

{¶ 6} At the time of the accident, Davis had an automobile liability insurance policy issued by Farmers Insurance of Columbus, Inc., appellee.  The policy had an effective date of February 1, 1993, and an expiration date of August 1, 1993.  Davis's policy of insurance with appellee included a provision for underinsured motorist coverage with limits of $25,000 per person and $50,000 per occurrence.  Additionally, Cavey had an automobile liability insurance policy with liability limits of $100,000 per person.  Following the accident, Davis made a claim with Cavey's liability insurance carrier seeking recovery for the injuries he sustained.  On February 28, 1995, Davis sought permission from appellee to accept a proposed settlement of approximately $82,500 from Cavey's insurer.  At that time, Davis also informed appellee of his intention to pursue an underinsured motorist claim under his policy with appellee.  On March 15, 1995, prior to Davis's finalizing a settlement with Cavey's insurer, appellee rejected Davis's claim for

underinsured motorist benefits. Cavey's insurance carrier ultimately paid $81,000 in settlement of Davis's claim against Cavey.

{¶ 7} On June 26, 1995, Davis filed a complaint against appellee in the Court of Common Pleas of Montgomery County. In the complaint, Davis sought a determination that he was entitled to recover underinsured motorist benefits under his policy with appellee. On January 9, 1997, the trial court granted summary judgment in favor of Davis. The trial court's rationale for granting summary judgment was substantially similar to the rationale that had been advanced by the trial court in *Ross*.

{¶ 8} On appeal, the court of appeals, relying on its prior holding in *Ross*, determined that Davis was not entitled to underinsured motorist coverage under his policy with appellee. Specifically, the court of appeals found that the law in effect at the time of Davis's settlement with the tortfeasor—not the law in effect at the time of the accident—controlled the determination whether Davis was entitled to underinsured motorist coverage. Therefore, the court of appeals found that the version of R.C. 3937.18 then in effect applied to the facts of the case and that the trial court erred in applying former R.C. 3937.18 and *Savoie* to grant summary judgment in favor of Davis. Accordingly, the court of appeals reversed the judgment of the trial court and remanded the cause to that court with instructions to enter judgment in favor of appellee. Thereafter, the court of appeals, finding its judgment on this issue to be in conflict with *Brocwell* and *McBee*, entered an order certifying a conflict. This cause is now before this court upon our determination that a conflict exists (case No. 97-2301) and pursuant to the allowance of a discretionary appeal (case No. 97-2056). Case Nos. 97-2056 and 97-2301 have been consolidated with case Nos. 97-402 and 97-551.

_____

*Dyer, Garofalo, Mann & Schultz, Carmine Garofalo* and *Ronald J. Maurer,* for appellants.

*Freund, Freeze & Arnold, Christopher W. Carrigg* and *Stephen V. Freeze,* for appellee in case Nos. 97-2056 and 97-2301.

*Elk & Elk Co., L.P.A.,* and *Todd O. Rosenberg,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers, in case No. 97-551.

*Vogelgesand, Howes, Lindamood & Brunn, P.L.L.,* and *James P. Hanratty,* urging affirmance for *amicus curiae,* Ohio Association of Civil Trial Attorneys, in case No. 97-2056.

––––––––––––––––

**DOUGLAS, J.**

**{¶ 9}** The question that has been certified for our consideration is as follows: "When does a cause of action for underinsured motorist coverage accrue so as to determine the law applicable to such a claim?" In the cases that are presently before us, the Montgomery County Court of Appeals held that Ross's and Davis's (hereinafter collectively "appellants") rights to underinsured motorist coverage did not accrue until appellants had exhausted the tortfeasors' available liability coverage. Because this condition precedent, *i.e.,* settlement with the tortfeasor, occurred after the effective date of Am.Sub.S.B. No. 20, the court of appeals held that the version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 controlled the determination whether appellants were entitled to underinsured motorist coverage. In reaching this conclusion, the Montgomery County Court of Appeals found its holdings in *Ross* and *Davis* to be in conflict with the judgment of the Court of Appeals for the Fifth Appellate District in *Brocwell* and the judgment of the Court of Appeals for the Ninth Appellate District in *McBee.* In *Brocwell* and *McBee,* the appellate courts determined that the law in effect on the date of the accident controls the determination whether the insured is entitled to underinsured motorist coverage.

**{¶ 10}** Considering the foregoing, and, further, that the date of the contract of insurance has also been presented by the parties for our consideration, we

construe the issue before us to be a choice among date of contract, date of accident, and date of exhaustion in considering what, if any, effect subsequent legislation might have on the relationship between an insurer and its insured. For the reasons that follow, we find that the Montgomery County Court of Appeals erred in determining that the version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 was the applicable law governing appellants' claims for underinsured motorist coverage.

I

{¶ 11} Appellee argues, and the Montgomery County Court of Appeals agreed, that an insured's right to underinsured motorist benefits accrues when certain contractual preconditions to such coverage are met. According to appellee, the contractual preconditions of appellants' automobile insurance policies required appellants to exhaust all applicable liability coverage before appellants could access their underinsured motorist coverage. Thus, appellee contends that appellants' claims for underinsured motorist coverage did not accrue until they had settled with the tortfeasor, thereby exhausting the tortfeasor's available liability coverage. Since that exhaustion did not occur until after Am.Sub.S.B. No. 20 went into effect, appellee asserts that, pursuant to the statutory law in effect, appellants were not entitled to underinsured motorist benefits. In support of its argument appellee relies on *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323.

{¶ 12} In *Kraly,* the Kralys entered into a contract of insurance with State Farm Mutual Automobile Insurance Company ("State Farm"). The State Farm policy provided automobile liability insurance as well as uninsured/underinsured motorist coverage. The terms of the policy required that a claim for uninsured motorist coverage must be brought within two years of the date of an accident. The Kralys were injured in an automobile collision between their vehicle and a vehicle operated by an *insured* tortfeasor. However, shortly before the end of the contractual two-year period of limitations, the Kralys were notified that the

tortfeasor's automobile liability insurance carrier had become insolvent. The Kralys sought to amend their cause of action against the tortfeasor to include a claim against State Farm for uninsured motorist coverage. Summary judgment was granted in favor of State Farm because the Kralys' claim for uninsured motorist benefits was not commenced within two years of the date of the accident.

{¶ 13} We held in *Kraly* that a contractual period of limitations is *per se* unreasonable if it expires before or shortly after the accrual of a right of action for uninsured motorist coverage. *Id.* at 635, 635 N.E.2d at 329. The court reasoned that the Kralys' claim for uninsured motorist benefits did not accrue until they had been notified that the tortfeasor's insurance company was insolvent. Since only three and one-half months remained before the end the contractual limitations period, the court determined that the period of time left for the Kralys to bring a claim for uninsured motorist coverage was unreasonable. *Id.* at 634, 635 N.E.2d at 328.

{¶ 14} *Kraly* is clearly distinguishable from the case at bar. First, *Kraly* involved a claim for *un*insured motorist coverage, while the present cause of action concerns claims for *under*insured motorist benefits. The distinction between uninsured and underinsured motorist coverage is too obvious to require any explanation. Second, the situation in *Kraly* is very different from that in the cases now before us. The threshold issue in *Kraly* involved an interpretation of Civ.R. 15(C). A related issue concerned the validity of the contractual limitations period discussed above and whether or not that provision was reasonable or against public policy. The court in *Kraly* was not called upon to address the same issue we are called upon to decide herein.

{¶ 15} In *Kraly,* the court determined that the "insolvency [of the tortfeasor's liability insurance carrier] was the triggering event for uninsured motorist coverage." *Id.* at 634, 635 N.E.2d at 328. The court analogized the situation in *Kraly* to those instances when a cause of action accrues upon the

*discovery* of the alleged harm.[2]  The court reasoned that on the date of the accident, the tortfeasor was insured, and, thus, any claim for uninsured motorist benefits before the insolvency would not have been contemplated.  Moreover, the court recognized that using the date of the accident as the accrual date for the Kralys' uninsured motorist claim would have been manifestly unfair given the date of the insolvency of the tortfeasor's carrier because the Kralys' time for filing such a claim was unreasonably brief, given the contractual limitations period.  *Id.* at 633-634, 635 N.E.2d at 327-328.

{¶ 16} We believe that the Montgomery County Court of Appeals was in error when it applied the holding of *Kraly* to appellants' causes of action.  *Kraly* unarguably involved a unique factual situation, and this court accordingly fashioned a remedy based upon concepts of fairness and public policy.  In any event, *Kraly* should not be read to stand for the proposition that claimants' rights to underinsured motorist *coverage* are contingent upon satisfaction of contractual preconditions to such coverage.  An automobile liability insurance policy will typically require exhaustion of the proceeds of a tortfeasor's policy before the right to *payment* of underinsured motorist benefits will occur.  However, the date that exhaustion of the tortfeasor's liability limits occurs is not determinative of the applicable law to a claim for underinsured motorist coverage.

II

---

2.  In *Kraly,* the court noted the similarities between contractual limitations periods and statutory limitations period.  In doing so the court compared the factual similarities of *Kraly* and the case of *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.  *Gaines* concerned the constitutionality of former R.C. 2305.11(B), the four-year statute of repose for medical malpractice actions.  The plaintiffs in *Gaines* discovered the event that gave rise to their injury "within the four-year statutory period but only six and one-half months before its expiration." *Kraly,* 69 Ohio St.3d at 634, 635 N.E.2d at 328.  In *Gaines,* the court determined that period to be unreasonably brief and allowed plaintiff's cause of action to accrue on the date that the malpractice was discovered.  In *Kraly,* the court concluded that the Kralys should be afforded no less protection "against an equally onerous *contractual* provision." (Emphasis *sic.*)  *Id.*  Thus, *Kraly* is akin to those causes of actions involving issues of accrual governed by the discovery rule.

{¶ 17} Appellants argue, in their first proposition of law, that the statutory law in effect at the time of entering into a contract of insurance controls the rights and duties of the contracting parties. Thus, according to appellants, when a contract for automobile liability insurance is entered into or renewed, the statutory law in effect at the time of contracting or renewal defines the scope of underinsured motorist coverage. We agree.

{¶ 18} Appellants' position on this issue is supported by a long line of decisions by this court. It is axiomatic that an insurance policy is a contract between the insurer and the insured. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph one of the syllabus. The court stated in *Goodale v. Fennell* (1875), 27 Ohio St. 426, 432, that "[w]hen a contract is once made, the law then in force defines the duties and rights of the parties under it." In *Weil v. State* (1889), 46 Ohio St. 450, 453, 21 N.E. 643, 644, quoting *Smith v. Parsons* (1823), 1 Ohio 236, 242, the court stated that " '[c]ontracts must be expounded according to the law in force at the time they were made; and the parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed part of the contract.' "

{¶ 19} Further, in *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547, syllabus, the court held that "[a]ny contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute." In *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 433, 23 O.O.3d 385, 386, 433 N.E.2d 555, 558, the court noted that provisions of an automobile liability insurance policy that vary from statutory requirements are unenforceable. This court has also previously stated that "[w]hile R.C. 3937.18 does not displace ordinary principles of contract law, a party cannot enter into contracts that are contrary to law." *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440, citing *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 51, 22 OBR 63, 71, 488 N.E.2d 840, 847

(A.W. Sweeney, J., dissenting). Based upon the foregoing it should be clear that the scope of coverage of an automobile liability insurance policy is defined by the statutory law in effect at the time of contracting.

{¶ 20} Appellants' position is further supported by Section 28, Article II of the Ohio Constitution, which provides that "[t]he general assembly shall have no power to pass * * * laws impairing the obligation of contracts." A number of our cases, read singly or together, support the proposition that subsequent legislative enactments cannot alter the binding terms of a preexisting agreement entered into by contracting parties under the law as it existed at the time that the contract was formed.

{¶ 21} For instance, we held in *Aetna Life Ins. Co. v. Schilling* (1993), 67 Ohio St.3d 164, 616 N.E.2d 893, syllabus, that a statutory provision applied to contracts that were entered into before the effective date of the statute would impair the obligation of contracts in violation of Section 28, Article II of the Ohio Constitution. We noted that if the statutory provision at issue in *Schilling* were applied to that case, "[it] would essentially change the contract which existed prior to the effective date of the statute." *Id.* at 167, 616 N.E.2d at 895. Moreover, in *Burtner-Morgan-Stephens Co. v. Wilson* (1992), 63 Ohio St.3d 257, 586 N.E.2d 1062, syllabus, a unanimous court reached a similar conclusion when it held that, pursuant to Section 28, Article II of the Ohio Constitution, a statute could not be retroactively applied to determine the distribution of royalties that were provided for in an agreement entered into prior to the enactment of the statute. In *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 28 OBR 337, 503 N.E.2d 753, syllabus, a majority of this court held that the retroactive application of statutory provisions to land installment contracts that were in existence at the time of the enactment of the statutes violated Section 28, Article II of the Ohio Constitution by impairing an obligation of contract.

{¶ 22} In the cases before us, each of the contracts was entered into before the enactment of Am.Sub.S.B. No. 20 on October 20, 1994. In fact, both policies expired well before the effective date of Am.Sub.S.B. No. 20. Appellee does not dispute that appellants had in effect at the time of their accidents valid and enforceable policies of automobile liability insurance with the appellee that included provision for underinsured motorist coverage. In *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599, a majority of this court stated that "[s]tatutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." *Id.* at 44, 19 OBR at 37, 482 N.E.2d at 602, citing 12 Appleman, Insurance Law and Practice (1981) 166, Section 7041. In other words, the only instances in which Am.Sub.S.B. No. 20 could have been incorporated into the appellants' policies of insurance with appellee without impairing the obligation of contract would have been if a new contract of insurance had been entered into, or a renewal (representing a new contract of insurance) of the existing policy had occurred. Neither situation occurred in the instant matters.

{¶ 23} As indicated in our discussion *infra*, the statutory law in effect at the time that the parties entered into their respective insurance contracts was former R.C. 3937.18, as interpreted by *Savoie.* The version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 on October 20, 1994, was intended to supersede the effect of our holding in *Savoie.* See Section 7 of Am.Sub.S.B. No. 20 (145 Ohio Laws, Part I, 238). Were we to accept appellee's argument that Am.Sub.S.B. No. 20 is the controlling law regarding the appellants' underinsured motorist claims, we would be permitting a subsequent legislative enactment to intervene and change the law and coverage contracted for in policies that were in effect at the time of the accidents. That result would permit Am.Sub.S.B. No. 20 to abrogate the terms (coverages) of an insurance contract that was agreed to,

entered into, and paid for before the date that the legislation became effective. This we decline to do.

{¶ 24} Accordingly, we hold that for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.

III

{¶ 25} Since we have concluded that the statutory law in effect at the time of contracting defines the scope of underinsured motorist coverage, we must now determine whether appellants are entitled to underinsured motorist benefits pursuant to the law applicable to their underinsured motorist claims. Olivea Ross's accident occurred on April 23, 1993. At that time, she had an automobile liability insurance policy with appellee that was in effect for the period of time from March 1, 1993 through noon, September 1, 1993. David Davis's accident occurred on May 14, 1993. His policy with appellee was effective for a six-month period beginning February 1, 1993 and ending noon, August 1, 1993. At the time of each accident, the decisional law governing an underinsured motorist claim was set forth in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, syllabus. In *Hill* the court held:

"Unless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage. (R.C. 3937.18[A][2], construed and applied; *Wood v. Shepard* [1988], 38 Ohio St.3d 86, 526 N.E.2d 1089, distinguished and explained.)."

{¶ 26} Clearly, under the decisional law at the time of the accidents as set forth in *Hill,* appellants would not be entitled to underinsured motorist coverage. However, on October 1, 1993, this court announced its decision in *Savoie v. Grange*

*Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. *Savoie* interpreted former R.C. 3937.18 and represented a substantial change in the law affecting issues of liability coverage and uninsured/underinsured motorist coverage. In *Savoie,* we held, at paragraph three of the syllabus:

"An underinsured claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (*Hill v. Allstate Ins. Co.* [1990], 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)"

{¶ 27} In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, this court set forth the following general rule concerning the retroactivity of our decisions overruling prior decisions: "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." Thus, given the application of the *Peerless* doctrine, at the time of appellants' automobile accidents when appellants were insured against loss under the terms of their automobile liability insurance policies with appellee, *Savoie* was the controlling decisional law. Therefore the law applicable to their respective causes of action is former R.C. 3937.18 as interpreted by *Savoie*. Pursuant to the law set forth in former R.C. 3937.18 and *Savoie,* appellants are entitled to receive underinsured motorist benefits from appellee.

Conclusion

{¶ 28} Accordingly, we reverse the judgments of the court of appeals and remand these causes for reinstatement of the trial courts' decisions.

*Judgments reversed*
*and causes remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., dissents.

COOK and LUNDBERG STRATTON, JJ., separately dissent.

_____

**COOK, J., dissenting.**

**{¶ 29}** The same court that has avoided contract analysis in deciding uninsured/underinsured motorist coverage issues today cites the syllabus of *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, for the axiomatic proposition that an insurance policy is a contract between the insurer and the insured. The court's opinions in *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, and *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317, however, are landmarks of how far decisions of this court have diverged from that proposition.

**{¶ 30}** The *State Farm* court abandoned earlier holdings that R.C. 3937.18 does not displace ordinary principles of contract law (see *Stanton v. Nationwide Mut. Ins. Co.* [1993], 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, 1199), and the cases that followed continued to chip away at the contractual relationship between the insurer and the insured. See, *e.g., Holt v. Grange Mut. Cas. Co.* (1997), 79 Ohio St.3d 401, 683 N.E.2d 1080 (policy definition of "insured" party inapplicable to exclude coverage of an insured's wrongful death beneficiary); *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913 (policy provision that subjects both a person sustaining bodily injury and a person asserting a derivative claim for loss of consortium based on that bodily injury to a single "per person" limitation invalid); *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438 ("other owned vehicle" exclusion unenforceable).

**{¶ 31}** In *Miller*, the majority held that, with respect to uninsured/underinsured motorist claims, the two-year statute of limitations for *bodily injury* (R.C. 2305.10) overrode the principle recognized in *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 295, 23 O.O.3d 281, 282, 432 N.E.2d 167, 169, that "[g]enerally, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, as between the parties, the time for

bringing an action on such contract to a period less than that prescribed in a general statute of limitations provided that the shorter period shall be a reasonable one." Accordingly, the *Miller* court threw out *Colvin*, based as it was on principles of contract, in favor of a statute designed to cover *tort* actions.

{¶ 32} Each of the cases cited above has been met with a sharp dissent, and a consistent objection in those dissents was that the court had departed from principles of contract law. I do not criticize the majority's choice of contract law as the proper overlay for deciding today's case. Instead, I write to document the paradoxical consequences of applying the legal precepts driving today's majority to the uninsured/underinsured motorist law now in place.

{¶ 33} The problem with today's decision is that the prior decisions of this court in *Savoie* and *Cole* have resulted in an interpretation of former R.C. 3937.18(A)(2) that is so contorted that application of even the soundest legal principles to that decisional law works absurdities. Indulging a legal fiction, a majority of this court bases, on principles of contract law, its decision that the parties to these insurance policies agreed to be governed by R.C. 3937.18 as interpreted by *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. The majority reaches this determination despite the fact that, at the time of contracting, *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, syllabus, provided the applicable law and interpreted former R.C. 3937.18(A)(2) in the same manner that it was re-enacted by the General Assembly in Am.Sub.S.B. No. 20. The majority's determination here also cannot be squared with the clarification by the General Assembly in Section 8 of Am.Sub.S.B. No. 20 (145 Ohio Laws, Part I, 238) that its intent "in amending division (A)(2) of section 3937.18 of the Revised Code [was] to declare and confirm that the purpose and intent of the *114th General Assembly in enacting division (A)(2) of section 3937.18 in Am.H.B. 489 was,* and the intent of the General Assembly in amending section 3937.18 in the Revised Code in this act is, to provide an offset against the limits of

15

the underinsured motorist coverage of those amounts available for payment for the tortfeasor's bodily injury liability coverage." (Emphasis added.)

{¶ 34} The majority announces that it is the statute, not the decisional law of this court, that is incorporated into the contract, thereby creating vested rights. Today's decision, however, effectively prolongs the life of the decisional law set forth in the third syllabus paragraph of *Savoie*, creating a vested contractual right in its application, despite the fact that *Savoie* never found support in the purpose of the statute that it purported to interpret. Even this, however, we should accept as an unavoidable consequence of applying the canons of judicial construction had former R.C. 3937.18(A)(2) been susceptible of the interpretation given in *Savoie* and later confirmed in *Cole v. Holland* (1996), 76 Ohio St.3d 220, 667 N.E.2d 353. It was not. See *Cole* at 227, 667 N.E.2d at 358 (Cook, J., dissenting).

{¶ 35} To date this court has never clearly identified an acceptable legal justification for its decisions in *Savoie* and *Cole* with respect to R.C. 3937.18(A)(2). Deciding majorities have not stated that former R.C. 3937.18(A)(2)'s setoff provision is either ambiguous or unconstitutional. See *Savoie, Cole*. Our only indication comes from Justice Pfeifer's concurring opinion in *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 66, 676 N.E.2d 506, 510. In *Beagle*, Justice Pfeifer, author of the *Savoie* opinion, stated his continuing concern that, although statutorily defined, use of the term "underinsured motorist coverage" in insurance policies is potentially confusing to the unsophisticated contracting insured. Whatever rationale may support that concern, it is not, and never was, the public policy of the statute. Accordingly, it is untenable to now interpret *Savoie*'s third syllabus paragraph as a command of former R.C. 3937.18(A)(2).

{¶ 36} At the time these parties entered into the insurance policies at issue, both the decisional law and the statutory law in effect prescribed a setoff of the amount recovered from a tortfeasor's insurer against the limits of the underinsured motorist coverage. No reasonable expectation could exist that the mandatory

16

offering of underinsured motorist coverage included excess coverage, as later mandated in *Savoie*. Accordingly, the presumptions that justify applying the law in effect at the time of contracting are absent in this case.

{¶ 37} I dissent from the majority's opinion not because the majority applies the wrong law, but because its decision to now apply contract principles to uninsured/underinsured motorist law cannot be reconciled with our existing opinions on the subject. Moreover, both the former and present versions of R.C. 3937.18(A)(2) provide, and have always provided, that the mandatory offering of underinsured motorist coverage of R.C. 3937.18(A)(2) allows for setoff of sums received from the tortfeasor's insurer against the insured's policy limits. Accordingly, there is no logical reason to prolong the controlling effect of *Savoie's* third syllabus paragraph.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————————