Western Reserve Mutual Casualty Company ("Western Reserve"), appeals from the judgment of the Putnam County Court of Common Pleas which granted declaratory judgment in favor of Elidia DeLeon and Simona Rodriguez on their motion for partial summary judgment and denied Western Reserve's motion for summary judgment.
On April 7, 1997, George Rodriguez, while operating a motor vehicle on State Route 281 in Henry County, was killed when another vehicle, negligently driven by Paul Grey, struck Rodriguez's vehicle. Simona Rodriguez, riding as a passenger with her husband George Rodriguez, was severely injured in this collision. The tortfeasor, Paul Grey, is not a party to this appeal.
Simona Rodriguez and Elidia DeLeon, the administratrix of the estate of George Rodriguez, were tendered separate payments of the per person limit of the tortfeasor's liability insurance of $100,000 each. The Appellees then requested that Western Reserve make available to them underinsurance collectively, to the extent of Western Reserve's single occurrence policy limit, $300,000. Western Reserve declined and instead offered both Appellees collectively $100,000 of underinsurance coverage. The Appellees, unable to agree with Western Reserve as to the amount of underinsurance available to them because of this occurrence, filed a complaint for declaratory judgment.
Appellees sought a judgment declaring that the separate amounts tendered by the tortfeasor's liability insurance carrier should be setoff separately, and not collectively, against Western Reserve's underinsurance policy limits. Under Appellees' interpretation of the policy, the $100,000 tendered by the tortfeasor to Elidia DeLeon would be setoff against Western Reserve's $300,000 policy limits, leaving $200,000 from which her wrongful death claim in excess of the tortfeasor's tender might be paid when determined. Likewise, the separate $100,000 tendered to Simona Rodriguez by the tortfeasor would also be setoff against Western Reserve's $300,000 policy limits, leaving $200,000 available to pay her separate underinsured personal injury claim when determined. The Appellees concede that because of the policy's single limit of liability, $300,000 is the most Western Reserve could owe to them collectively.
Western Reserve answered the Appellees' complaint and filed a counterclaim for declaratory judgment urging that the policy should be interpreted to mean that all sums paid by the tortfeasor to all the insureds collectively should be setoff against the single occurrence policy limit. Under such a construction, the $200,000 received collectively by Elidia DeLeon and Simona Rodriguez would be offset against the $300,000 policy limit, leaving only $100,000 available to both Appellees. The trial court rejected Western Reserve's interpretation of the insurance agreement and determined that the policy required setoff to be done separately. Appellees' motion for partial summary judgment was then granted and the remaining claims were dismissed upon agreement of the parties.
 I.
Three of Western Reserve's four assignments of error state:
1. The Trial Court (sic) Ruling Holding Appellees Entitled To Recover The Full Single Limit Of Appellant's Underinsured Coverage, In Addition To The Coverage Already Provided Under The Tort Feasor's Liability Policy, Was Contrary To R.C. § 3937.18, Ross v. Farmers and Cole v. Holland.
2. The Court Erred In Applying Radenbaugh and Derr Given The Contract For Underinsurance Coverage Was Entered Into Following The Amendments to R.C. § 3937.18 In October Of 1994.
3. The Trial Court Erred In Ignoring The Clear And Unambiguous Language In Appellant's Policy Which Entitled It To A Set Off In The Amount Of $200,000.
Western Reserve's first three assignments of error are interrelated and essentially are separate arguments explaining why Western Reserve believes the trial court erred when granting partial summary judgment to the Appellees. Accordingly, these three assignments of error will be discussed together.
When reviewing a determination on a motion for summary judgment, an appellate court's review is independent of the trial court's judgment. Midwest Specialties, Inc. v. FirestoneTire Rubber Co. (1988), 42 Ohio App.3d 6, 536 N.E.2d 411,cause dismissed, 39 Ohio St.3d 710, 534 N.E.2d 94. Summary judgment is available under Ohio Civ. R. 56(C) when the movant establishes the following: 1) that there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. Bostic v. Connor (1988),37 Ohio St.3d 144, 524 N.E.2d 881.
Here, the facts of this case are undisputed. Western Reserve admits that each Appellee is an insured under its policy and each is entitled to underinsured benefits thereunder. The issue, however, is how much coverage must be afforded to the Appellees based on the setoff provision within the insurance agreement.
With respect to uninsured and underinsured motorist law, Justice Douglas has recognized:
 * * * that un insured-motorist cases are different from under insured-motorist cases; that multiple-claimant cases are different from single-claimant cases; that cases involving wrongful death are different from those where no death is involved; and that cases where there is a tortfeasor liability policy are different from those where there is no liability policy.
 Thus, we have cases (1) where the tortfeasor is insured and there is only one injured claimant; (2) where the tortfeasor is insured and there are more than one injured claimant; (3) where the tortfeasor is insured and there is a single wrongful death; (4) where the tortfeasor is insured and there are injured claimants and a wrongful death claimant or claimants; (5) where a tortfeasor is uninsured and there are single or multiple injured claimants and single or multiple wrongful death claimants and any or all of such claimants have uninsured-motorist coverage and under insured-motorist coverage.
Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 510,620 N.E.2d 809, 816-817 (J. Douglas, concurring).
Here, we have an underinsured tortfeasor, one wrongful death claimant, one injured claimant and a provider of underinsurance coverage with a single occurrence limit of $300,000. This court, in an action arising out of the same county, has dealt with circumstances nearly identical. Radenbaugh v. MotoristIns. Co. (1993), 86 Ohio App.3d 836, 621 N.E.2d 1301. InRadenbaugh, we held that the recovery obtained by two claimants injured in the same collision "should be separately and successively set off from underinsured motorist coverage provided by the [claimants'] insurance policy" where the policy had a single occurrence limit and did not clearly and unambiguously describe the manner in which setoff was to be calculated. Id. at 841, 621 N.E.2d at 1303.
Western Reserve contends our decision in Radenbaugh, and the Ohio Supreme Court's decision in Derr v. Westfield Cos. (1992),63 Ohio St.3d 537, 589 N.E.2d 1278 (a case cited inRadenbaugh), were superseded by Am.Sub.S.B. 20, effective on October 20, 1994. That amendment to R.C. § 3937.18, commonly referred to as the "Savoie amendment," revised the minimum requirements for mandatory underinsured motorist coverage in Ohio. Cole v. Holland (1996), 76 Ohio St.3d 220, 667 N.E.2d 353
(holding that the amended statute was not, however, intended to be applied retroactively). However, as explained more fully below, the holdings in Derr and Radenbaugh, decidedprior to Savoie, were based on principles of contract interpretation and not an expanded view of the rights afforded by the underinsured motorist law. Radenbaugh, 86 Ohio App.3d 836, 621 N.E.2d 1301, Derr, 63 Ohio St.3d 537, 589 N.E.2d 1278.
Nevertheless, Appellees agree that the amended version of R.C. § 3937.18(A)(2) is the applicable statutory law here as held by the Ohio Supreme Court in its recent decision of Rossv. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,695 N.E.2d 732. In Ross, the court held that the statutory law in effect at the time a contract for automobile liability insurance was entered is the law that controls the rights and duties of the contracting parties. Id. Here, George Rodriguez renewed his policy with Western Reserve on December 3, 1996, after the statute had been amended. Accordingly, the amended version of R.C. § 3937.18 in effect at the time the contract was entered[1] does apply here. Id.
That version of R.C. § 3937.18 stated:
 Mandatory offering of uninsured and underinsured motorist coverage.
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
* * *
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
R.C. § 3937.18(A)(2) (S.B. 20 eff. 10-20-94) (emphasis added).
This amended statute continues to mandate underinsurance coverage. However, as is apparent from the underlined text, the amendment also appears to limit the scope of that mandatory coverage. R.C. § 3937.18(A)(2). Western Reserve contends, therefore, that the new restrictions to mandatory underinsurance coverage should be interpreted to likewise restrict the scope of underinsurance coverage it agreed to provide to the Appellees. However, when interpreting the rights and obligations of parties to an insurance agreement, we must first look to the terms of that agreement before determining whether statutory requirements are met. See, In Re NationwideIns. Co. (1989), 45 Ohio St.3d 11, 543 N.E.2d 89 (recognizing that while a former version of R.C. § 3937.18 gave insurance companies the right to provide setoff language in their contracts, the obligations of the parties were nevertheless controlled by the clear language of their contract).
Western Reserve's insuring agreement states:
 We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" caused by an accident.
Further, under its LIMIT OF LIABILITY provision, the policy states in part:
 The Limit of Liability shown in the Declarations [$300,000] for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
 1. "Insureds";
 2. Claims made;
 3. Vehicles or premiums shown in the Declarations; or
 4. Vehicles involved in the accident.
* * *
Finally, the policy's setoff provision states:
 With respect to coverage under Section 2.
[underinsured motorist coverage] . . . the limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible such that the total amount owed by [sic][2] under this provision of policy is no greater than what could be recovered from the owner or operator of a vehicle carrying liability limits equal to the limits specified in this portion of your policy.
(Western Reserve Replacement policy p. 2)
The setoff provision in Western Reserve's policy states that "the limit of liability shall be reduced by all sums paid [by the tortfeasor] because of 'bodily injury.' " However, this provision does not sufficiently describe the manner setoff is to be computed. For instance, the contract does not state whether Western Reserve may aggregate amounts received by all claimants against their policy limits or whether the setoff should be done separately for each claimant.
In Derr v. Westfield Cos. (1992), 63 Ohio St.3d 537,589 N.E.2d 1278, a nearly identical set off provision in a single limit policy with separate claimants was interpreted by the Supreme Court. There, the setoff provision stated: "However,the limit of liability shall be reduced by all sums paidbecause of the bodily injury by or on behalf of persons ororganizations who may be legally responsible." Id. at. 541, 5 89 N.E.2d at 1281. The Derr court determined that "the set offlanguage used in the instant policy is not clear andunambiguous as to the manner in which the setoff is to beeffectuated, especially with respect to the situation wheremultiple insureds present claims for underinsured motoristcoverage." Id. at 541-542, 589 N.E.2d at 1282 (emphasis added).
We, likewise, are unable to discern from Western Reserve's setoff provision a "clear and unambiguous" manner for calculating setoff when multiple claimants seek coverage under this single limit policy. Id. Accordingly, as noted in Derr,
"language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Id. at 542,589 N.E.2d at 1282, quoting, Faruque v. Provident Life Acc. Ins.Co. (1987), 31 Ohio St.3d 34, 508 N.E.2d 949. Therefore, construing the ambiguous setoff provision here strictly against Western Reserve, separate and successive setoff of the amounts tendered to each claimant from the tortfeasor against Western Reserve's policy limits is the proper method of calculating Western Reserve's underinsurance obligation.
Further, this method of computing setoff does not offend the only restriction in Western Reserve's policy with respect to setoff. If separate and successive setoff is done, neither Elidia DeLeon or Simona Rodriguez will obtain more from Western Reserve "than what could be recovered from the owner oroperator of a vehicle carrying liability limits equal to thelimits specified in this portion of your policy." (Western Reserve Replacement policy p. 2).
As noted, Western Reserve also contends that separate and successive setoff would not comply with the amended version of the underinsured motorist statute, R.C. § 3937.18(A)(2). Compliance with this statute has historically been relevant only to determine whether an insurance company has provided enough insurance coverage to an insured when injured byuninsured or underinsured motorist. See, Martin v. MidwesternGroup Ins. Co. (1994), 70 Ohio St.3d 478, 639 N.E.2d 438. The amended statute does not forbid multiple claimants to separately and successively setoff amounts available for payment from a tortfeasor against a single limit policy. R.C. §3937.18(A)(2)
The Supreme Court has recognized that one purpose of theSavoie amendment was to permit insurance companies to setoff amounts available for payment to the insured from the tortfeasor against the insured's policy's limits, rather than their total damages. Cole, 76 Ohio St.3d at 224,667 N.E.2d at 356. Here, Appellees do not seek to obtain setoff from their total damages. Rather, Appellees seek separate and successive setoff from Western Reserve's single policy limit. Therefore, while the amended version of R.C. § 3937.18(A)(2) may allow an insurance company to preclude setoff from a claimant's total damages, it does not forbid separate and successive setoff against the insured's policy limits.
Further, the amount available to each insured after separate and successive setoff, is a maximum of $200,000. Western Reserve's single occurrence limit is $300,000. Accordingly, because the maximum amount each insured could recover is less than $300,000, neither insured will individually recover more than they could have recovered had the tortfeasor been uninsured. R.C. § 3937.18(A)(2). Also, the $200,000 maximum recovery available to each insured is not excess insurance because Appellant will never pay over $300,000 in total to all claimants, the total limit in its policy. Id. Accordingly, our interpretation of Western Reserve's setoff provision, requiring separate and successive setoff of amounts available for payment to separate claimants against a single policy limit, is not contrary to R.C. § 3937.18(A)(2).
Because summary judgment was properly granted to the Appellees, Western Reserve's first, second and third assignments of error are without merit and are overruled.
 II.
Western Reserve's fourth assignment of error states:
 Even If The Trial Court Were Correct In Applying The Former Version Of R.C. § 3937.18, Plaintiffs [sic] Claims Against Western Reserve Were Not Ripe Given All Other Available Coverage Had Not Been Exhausted.
As noted above, pursuant to Ross, supra, the amended version of R.C. § 3937.18 in effect at the time the contract for insurance was entered is the controlling statutory authority. Accordingly, Western Reserve's fourth assignment of error concerning an interpretation of former R.C. § 3937.18 has no relevance here, and is overruled as moot.
Judgment Affirmed.
SHAW, P.J., and HADLEY, J., concur.
[1] This statute was subsequently amended after the contract for insurance was entered. See, R.C. § 3937.18(A)(2) (effective 9-3-97).
[2] There appears to be language omitted after the word "by." We read this portion of the policy to mean ". . . amount owed by [the insurance provider] . . ."