OPINION
On May 13, 1995, an automobile driven by defendant, Frances A. Adams, traveled left of center on Chardon Road in Willougby, Ohio and collided head-on with another vehicle traveling in the opposite direction and occupied by Vinko Maric and his son, Tomislav. As a result of the collision, Vinko Maric was killed and Tomislav was seriously injured. The deceased was survived by his wife, Kata, and their three minor children, Nikola, Mirko, and Tomislav.
The tortfeasor, Adams, was insured by a policy issued by appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), with liability coverage limits of $100,000 per person and $200,000 per accident. At the time of the accident, Mr. Maric was the named insured on two policies of automobile liability insurance also issued by State Farm. The policies issued to the Marics each contained uninsured/underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. The declaration page of each of the Marics' insurance policies with State Farm indicated that they became effective on April 24, 1995, roughly six months after the effective date of S.B. 20.[1]
Initially, there was some question as to whether State Farm would extend liability coverage on behalf of Adams. Due to this uncertainty, the Marics filed an uninsured motorist claim under their own State Farm policies. State Farm paid the Maric family $200,000 under their uninsured motorist coverage as follows: $100,000 for the wrongful death of Vinko Maric and $100,000 for the bodily injury claim of Tomislav. The record on appeal contains two judgment entries from the Probate Division of the Lake County Court of Common Pleas, filed June 26, 1996, approving the distribution of the insurance proceeds paid by State Farm. For the amounts paid for Tomislav's injuries, the court approved attorney fees in the amount of $20,000 with the remaining $80,000 to be held in a certificate of deposit for the benefit of Tomislav that could not be withdrawn until he reached the age of eighteen. The $100,000 paid for the wrongful death of Vinko Maric resulted in attorney fees of $20,225 with the probate court approving the distribution of the remaining $79,775 to the deceased's wife, Kata Maric.
In consideration of the $200,000 received pursuant to the Marics' uninsured motorist coverage, Kata Maric, individually, and as legal guardian of Tomislav Maric and as administratrix of the estate of Vinko Maric, signed two documents entitled "RELEASE ANDTRUST AGREEMENT." In the agreement, Kata Maric agreed to assign to State Farm any and all rights that the Marics had against the tortfeasor, Adams and/or any liability insurance policy available to Adams. Kata Maric further agreed to hold in trust for the benefit of State Farm any funds received from Adams and/or Adams' insurance carrier. However, the agreement was conditioned on the following:
 "It is further understood and agreed that this settlement is effected by the parties pursuant to the amendments of R.C. 3937.18 as effected by Senate Bill-20, effective October 20, 1994. The undersigned will have one (1) year after the Ohio Supreme Court issues its opinion in the case of Beagle v. Walden (State Farm Mutual automobile Insurance Co.) Ohio Supreme Court Case No. 95-2409, to reopen this case and to pursue any further recovery under [their policy of insurance.]"
Specifically, S.B. 20 explicitly authorized insurers to limit multiple derivative claims that arise out of injuries to a single insured, to a single per person coverage limit. R.C. 3937.18(H). S.B. 20 further recognized that underinsured insurance is not to be considered "excess insurance" and that the "policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." R.C. 3937.18(A)(2).
On January 13, 1997, appellants, Kata Maric, individually and as administratrix of the Estate of Vinko Maric, as well as Nikola Maric, Mirko Maric, and Tomislav Maric, filed a complaint in the Lake County Court of Common Pleas seeking declaratory judgment as to their ability to receive additional funds from the policies of insurance issued by State Farm. Appellants also asserted claims against the tortfeasor and State Farm sounding in wrongful death, survivorship, and personal injury. State Farm subsequently answered the complaint and an agreement was reached whereby the tortfeasor was dismissed from this action. State Farm determined that it would extend liability coverage on behalf of the tortfeasor and tendered the $200,000 policy limits from the tortfeasor's policy of insurance to appellants subject to the prior agreement reached between the parties. It was alleged that the tortfeasor's liability coverage was placed in an interest bearing escrow account pending resolution of this action. As to their respective claims, both parties filed motions for summary judgment.
By judgment entry filed June 5, 1998, the trial court granted State Farm's motion for summary judgment and denied appellant's motion for summary judgment and request for declaratory judgment. From this judgment, appellant filed a timely notice of appeal and now raises the following five assignments of error:
 "[1.] The trial court erred in holding that the subrogation language in the Marics' policy with State Farm entitles State Farm to step in front of the Marics and collect the tortfeasor's $200,000 policy limits.
 "[2.] The trial court erred in granting State Farm's motion for summary judgment since the trial court ignored the impact of Andrews and its progeny.
 "[3.] The trial court erred in granting State Farm's motion for summary judgment since the court ignored the impact of Derr.
 "[4.] The trial court erred in not applying the law of Savoie
to this case.
 "[5.] The trial court erred in not applying the law of Schaefer."
Due to the nature of appellants claims, we will be addressing their assignments of error out of order. We will first address appellants' fourth assignment of error.
In their fourth assignment of error, appellants allege that the trial court erred by not applying the law of Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809 to this case. Appellants contend that although Savoie was statutorily overruled by Senate Bill 20, effective October 20, 1994, Savoie is still the controlling law because S.B. 20 is unconsitutional.
Because appellants did not comply with R.C. 2721.12, we do not need to address whether R.C. 3937.18, as amended by S.B. 20 is constitutional. At the time of this action, R.C. 2721.12, which has since been amended, provided, in part:
 "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding. * * * [I]f any statute * * * is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and shall be heard." (Emphasis added.)
In the instant case, appellants first raised the issue of the constitutionality of S.B. 20 in their motion for summary judgment. The record does not indicate that the Attorney General was ever served with a copy of the proceeding or otherwise notified that appellants were challenging the consitutionality of R.C. 3937.18. Failure to comply with the mandates of R.C. 2721.12 deprives a court of jurisdiction to consider a constitutional challenge to a statute.Ohioans for Fair Representation, Inc. v. Taft (1993),67 Ohio St.3d 180,183, 616 N.E.2d 905.
In the case sub judice, the trial court did not address the constitutionality of S.B. 20 and instead concluded that Savoie did not apply because it had been overruled by R.C. 3937.18, as amended by S.B. 20. Because appellants entered into their contract of insurance in April of 1995, approximately six months after the effective date of S.B. 20, the trial court properly concluded that S.B. 20 and not the law of Savoie applied. See Ross v. FarmersIns.Group of Cos. (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus ("For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.") Appellant's fourth assignment of error has no merit.
We will next address appellant's fifth assignment of error. In their fifth assignment of error, appellants allege that the trial court erred by not applying the law of Schaefer v. AllstateIns. Co. (1996), 76 Ohio St.3d 553, 668 N.E.2d 913. Appellants rely on Schaefer for the proposition that an insurance policy cannot validly limit multiple claims for loss of consortium to a single per-person coverage limit. In Schaefer, the Ohio Supreme Court held that:
 "Each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable." Id. at syllabus.
A review of Schaefer reveals that the Ohio Supreme Court was interpreting the statutory law before it was amended by S.B. 20. The amendment to R.C. 3937.18 specifically authorized insurers to limit multiple derivative claims, such as claims for loss of consortium, to a single per-person coverage limit. R.C. 3937.18(H) provides:
 "Any automobile liability or motor vehicle liability policy of insurance that includes [uninsured and underinsured motorist] coverages * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, not withstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit, shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
The Marics' insurance included such a limitation, it provided that all damages arising out of bodily injury to one person were subject to a per-person limit of $100,000. Because two persons sustained bodily injury in the accident, all claims, including those for loss of consortium, were subject to total coverage in the amount of $200,000 under their uninsured motorist policy. Appellants received $200,000 from their insurance company in uninsured motorist benefits; therefore, they are not entitled to additional coverage.
Appellants also contend that State Farm's split limit coverage is ambiguous when more than one person is injured in an accident. State Farm's limits of liability provide:
 "Under `Each Person' is the amount of coverage for all damages arising out of and due to bodily injury to one person. `Bodily injury to one person' includes all injury and damages to others arising out of and resulting from this bodily injury. Under `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person,' for all damages arising out of and due to bodily injury to two or more persons in the same accident."
We have analyzed nearly identical policy language and have held that it is not ambiguous. See Estate of Springer v. NationwideIns. Co. (Aug. 6, 1993), Ashtabula App. No. 92-A-1688, unreported.
Appellants lastly contend that the term "underinsured motorist coverage" is ambiguous and, thus, we should not apply the law as amended by S.B. 20. As judges, we have no choice but to apply the law as it is written by the General Assembly. Appellant's fifth assignment of error has no merit.
We will next address appellants' first assignment of error. In appellants' first assignment of error, they allege that the trial court erred in holding that the subrogation language in the Marics' policy with State Farm entitles State Farm to step in front of the Marics and collect the tortfeasor's $200,000 policy limits. The State Farm policy at issue in this case includes a subrogation clause at page 21 of the policy:
"Our Right to Recover Our Payments
"* * *
"c. Under uninsured motor vehicle coverage
 "(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured person recovers from any party liable for the bodily injury.
 "(2) If the person to or for whom we have made payment has not recovered from the party at fault, he or she shall:
"(a) keep these rights in trust for us;
"(b) execute any legal papers we need; and
 "(c) when we ask, take action through our representative to recover our payments.
 "We are to be repaid our payments, costs and fees of collection out of any recovery."
Appellants contend that the term "injured person" is ambiguous because it is reasonably susceptible to two meanings. Appellants assert that it could mean the persons who sustained bodily injury,i.e., Vinko and Tomislav, or it could mean the persons who sustained legally compensable injury, i.e., Kata and the other children. The probate court distributed the proceeds from the uninsured motorists policy to Kata for Vinko's wrongful death and to Tomislav for his personal injuries. Appellants argue that State Farm may have no right of subrogation if the court distributes the $200,000 being held in escrow differently than it distributed the $200,000 received from uninsured motorists policy. They assert that State Farm would have no right of subrogation if the probate court distributed the escrowed money to satisfy the loss of consortium claims of Kata and the other children rather than the personal injury claims of Vinko and Tomislav.
We conclude that the term "injured person," as it is used in State Farm's insurance policy, is unambiguous and State Farm has a right of subrogation entitling it to receive the insurance proceeds held in escrow by the probate court. Appellants' argument is dependent upon the law as it existed prior to S.B. 20. Under Savoie
and Schaefer, which we have concluded do not apply to this case, each person who had a loss of consortium claim was entitled to a separate per-person limit of coverage. Prior to S.B. 20, if a married man with one child sustained bodily injury in an accident with an uninsured motorist and had uninsured motorist policy limits of $100,000 per person and $300,000 per accident, $300,000 of coverage would be available to satisfy the following claims: the married man's claim for personal injuries, the wife's claim for loss of consortium, and the child's claim for loss of consortium.
Under S.B. 20, only $100,000 of coverage would be available to satisfy the man's personal injury claim and the derivative claims for loss of consortium. In the instant case, two individuals sustained bodily injury in the accident. All claims resulting from the accident were subject to two $100,000 per-person limits. State Farm had $200,000 of exposure for the two injury claims resulting from the accident. It paid $200,000 to the Marics because of the bodily injuries sustained by Vinko and Tomislav. Because the Marics' claims are derived from the bodily injuries sustained by Vinko and Tomislav and are not separate claims entitled to their own separate per-person limit, the "injured persons" in State Farm's subrogation clause necessarily refers to the individuals who sustained bodily injury. State Farm paid $200,000 because Vinko and Tomislav were injured in the accident; under the principles of subrogation, they are entitled to the money recovered by the Marics from the tortfeasor, who was liable for the injuries to Vinko and Tomislav. Appellants' first assignment of error has no merit.
We will next address appellants' second assignment of error in which they allege that the trial court erred by ignoring the impact of Motorists Mutual Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362,604 N.E.2d 142. In Andrews, the Ohio Supreme Court held that:
 "When determining whether a motorist is underinsured within the meaning of R.C. 3927.18(A)(2), the amount actually available for payment under the tortfeasor's liability insurance policy must be compared with the insured's underinsured motorist coverage limits. If the amount available for payment is less that the insured's underinsured policy limits, then the insured is entitled to the underinsured coverage." Id. at syllabus.
Appellants contend that if they had recovered from the tortfeasor first, and Kata had received $100,000 for Vinko's wrongful death, her three children would be entitled to make an underinsured claim to State Farm pursuant to Andrews. Appellants assert that the comparison would have been between the amount available for payment to the children, which was nothing because the payment to Kata exhausted the policy limits, and the $100,000 per person limit of their State Farm uninsured motorist policy.
This court has previously addressed whether Andrews applies to cases in which S.B. 20 is the controlling law. In Smock v.Hall (Jan. 22, 1999), Geauga App. No. 97-G-2090, unreported, we held that legislative changes to R.C. 3937.18(A)(2) "defeated any viability that the Andrews reasoning may still have had." R.C.3937.18(A)(2) defines underinsured motorist coverage as:
 "an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under the all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added).
Appellants settled for $200,000 when they believed that the tortfeasor was uninsured. As we have previously discussed, $200,000 is all that the Marics were entitled to for all of their claims under the language of their insurance policy. Pursuant to R.C. 3937.18(A)(2), they are not entitled to more money now that the tortfeasor's liabilty insurance has agreed to pay. Appellant's second assignment of error has no merit.
In appellant's third assignment of error, they allege that the trial court erred by ignoring the impact of Derr v. WestfieldCos. (1992), 63 Ohio St.3d 537, 589 N.E.2d 1278. The issue inDerr was "whether an insurer on a single-limit underinsured motorist policy may set off against that single limit of liability the total amount paid by a tortfeasor's insurance, when the claims of each of the claimants taken individually do not reach that limit as reduced by the amount paid to each claimant by the tortfeasor." Id. at 539. For the following reasons, Derr does not apply to the instant case. Derr dealt with how an underinsured motorist policy should be divided amongst three claimants in a wrongful death action. As we previously discussed, appellants are not underinsured because the tortfeasor's liability insurance had the same limits as their uninsured motorist coverage. Furthermore, the reasoning in Derr was contingent upon the law that each claimant in a wrongful death action was entitled to a separate per-person limit. S.B. 20 authorizes an insurance company to limit all claims resulting from one death to one per-person limit. The trial court did not err by failing to consider the impact of Derr. Appellants' third assignment of error has no merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
 _____________________ JUDGE ROBERT A. NADER
FORD, P.J., concurs, O'NEILL, J., dissents with dissenting opinion.
[1] The declaration page of State's Farms insurance policy indicated that appellant purchased coverage "U." Coverage "U" was described on the index page of the policy (listed as "WHAT IT IS AND WHERE YOU CAN FIND IT — THE INDEX") as follows:
 "U — Uninsured Motor Vehicle — When the other car or driver is not insured or is underinsured."