OPINION
This matter presents a timely appeal from a judgment rendered by the Mahoning County Common Pleas Court granting the motion for summary judgment filed by defendant-appellee, Nationwide Mutual Insurance Co., against plaintiffs-appellants, Rosetta M. Clevenstine, et al.
December 18, 1994, Rosetta M. Clevenstine, while driving her automobile, was struck by another automobile driven by Shane P. Naughton (Naughton). Mrs. Clevenstine allegedly suffered serious physical injuries as a result of the accident. Furthermore, Malcom Clevenstine, Mrs. Clevenstine's husband, allegedly lost the services and companionship of his wife as a result of the accident. Naughton's insurance carrier, Meridian Insurance Company, paid Mrs. Clevenstine $100,000.00, which was Naughton's policy limit. Mr. and Mrs. Clevenstine thereafter submitted an underinsured motorist claim to appellee. Mrs. Clevenstine's claim was for personal injuries and Mr. Clevenstine's claim was for loss of consortium. Appellee denied payment of these claims and on December 17, 1996, Mr. and Mrs. Clevenstine (hereinafter referred to collectively as appellants) filed a complaint against appellee claiming breach of contract, negligence and bad faith. Appellants also sought a declaratory judgment from the trial court requesting that it set forth their rights in connection with their insurance policy.
Appellee filed a motion for summary judgment, alleging that appellants' underinsured claims were denied because all claims, including derivative claims, were subject to a single per person policy limit of $100,000.00. Furthermore, appellee argued that it was entitled to subrogation on any amounts collected from Naughton. The trial court subsequently granted appellee's motion for summary judgment. This appeal followed.
Since appellant's first and second assignments of error have a common basis in law and fact, they will be discussed together and allege respectively as follows:
 "The Trial Court committed prejudicial error as a matter of law in applying the provisions of R.C. § 3937.18, as amended by Senate Bill 20 on October 20, 1994, to determine that Defendant-Appellee was entitled to summary judgment on the claims of Plaintiffs-Appellants for breach of contract, negligence, and for a declaratory judgment.
 "The Trial Court committed prejudicial error as a matter of law in determining that Defendant-Appellee was entitled to summary judgment on the claim of Plaintiffs-Appellants for bad faith."
Summary judgment is governed by Civ.R. 56(C), which states, in pertinent part:
 "* * *. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Furthermore, in Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346, the Ohio Supreme Court held that summary judgment is proper when viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to the moving party. In determining whether a trial court has properly granted summary judgment, a court of appeals must conduct a de novo review of the record. Grafton v. Ohio Edison Company (1996), 77 Ohio St.3d 102.
Appellants filed two different underinsured motorist claims, one for personal injuries and one for loss of consortium. The insurance contract included an underinsured liability coverage limitation, which stated:
 "AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES We
agree to pay losses up to the limits stated in the attached Declarations. Any change to those limits must be requested by the policyholder in writing. The following applies to these limits:
 "1. Bodily injury limits shown for any one, person are for all legal damages, including all derivative claims, claimed by anyone for bodily injury to one person as a result of one occurrence. Subject to this limit for any one person, the total limit of our liability shown for each occurrence is for all damages, including all derivative claims, due to bodily injury to two or more persons in any one occurrence.
 "2 Limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest per person limit applicable to any one motor vehicle
under this policy or any other policy issued by us.
 "3. The limits of this coverage will be reduced by any amount paid by or for any liable parties.
 "4. Damages payable, if less than the limits of this coverage, will be reduced by any amount paid by or for any liable parties."
The trial court viewed these contract provisions and determined that both the claim for personal injuries and the claim of loss of consortium were subject to a single per person underinsured motorist limitation of $100,000.00. Furthermore, the trial court found that appellee was entitled to subrogation on any amounts collected from Naughton. From this analysis, the trial court determined that appellants' underinsured policy limitation was met since the single per person underinsured policy limitation was $100,000.00, and this was the exact amount collected from Naughton. The trial court based its holding upon a belief that R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, was the applicable law.
The right of subrogation was established in common law and is supported by R.C. 3937.18, thereby is reasonably included in insurance contracts which provide underinsured motorist coverage.Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, (overruled on other grounds). Therefore, the effective date of Am.Sub.S.B. No. 20 does not affect the subrogation clause in the present insurance contract, and appellee was entitled to subrogation on the amount collected from Naughton against the amount it must pay appellants for their underinsured motorist claims.
However, the law concerning the effect of the insurance provision which subjected all derivative claims to a single policy limit varies between R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, and cases decided before its inception. InSchaefer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, the Ohio Supreme Court considered an insurance contract provision that subjected a loss of consortium claim to a single policy limit which was drafted before the effective date of R.C. 3937.18, as amended by Am.Sub.S.B. No. 20. In Schaefer, supra, the Ohio Supreme Court invalidated such insurance contract provision, holding, "* * * that each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable."
In contrast, R.C. 3937.18, as amended Am.Sub.S.B. No. 20, states:
 "(H) Any automobile liability or motor vehicle liability policy of insurance that includes [uninsured and underinsured coverage] and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
(Emphasis added).
In Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, the Ohio Supreme Court held that the statutory law in effect at the time of entering into an insurance contract controls the scope of coverage of an underinsured motorist claim. However, Am.Sub.S.B. No. 20 could apply without impairing the obligation of the present insurance contract if there was a new contract of insurance entered into, or if a renewal which represented a new insurance contract had occurred. Ross, supra.
Appellee argues that appellants' first policy was in effect from March 1, 1993 through September 1, 1993. Appellee argues that this policy expired before the effective date of Am.Sub.S.B. No. 20. Appellee contends that a new policy was agreed to by the parties because there were substantive amendments to the existing policy, and that the new policy period began on November 1, 1994 and was effective through March 19, 1995. Appellee argues that since the new policy was not effective until November 1, 1994, this date was after the effective date of Am.Sub.S.B. No. 20, which was October 20, 1994. Appellee concludes that R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, applied to the present case and that the insurance contract provision limiting the derivative claims to a single per person policy limit was enforceable. Therefore, appellee argues that the trial court committed harmless error when it used the date of the accident in determining which statutory law applied.
Even assuming arguendo that appellee is correct in asserting that the parties entered into a new insurance contract, it is nonetheless unclear upon which date such contract became effective. Appellee claims that the new contract became effective on November 1, 1994 through March 19, 1995 and the record contains an automobile policy declaration page which reveals these dates as the effective dates, as well as an issuing date of December 7, 1994. However, appellants attached a billing notice to its original complaint which stated:
 "Your policy has been changed effective 09/19/94. We have, on your 1988 Ford E150, changed driver operator status to occasional, added annual mileage discount, applied good student discount.
 "Billing notice for the six month renewal premium on your auto insurance policy for the policy term from 09-19-94 to 03-19-95, first of two installments including an installment service charge of $1.00, from the Nationwide Mutual Insurance Company." (Emphasis added).
This second policy declaration page (which was provided in conjunction with the billing notice, to which appellants referred in their complaint) and the billing notice both indicate that the effective date was September 19, 1994, which is before the October 20, 1994 effective date of Am.Sub.S.B. No. 20. Furthermore, the automobile policy declaration page attached to the billing notice in question stated that it was issued on August 30, 1994. This issuance date also precedes the October 20, 1994 effective date of Am.Sub.S.B. No. 20.
Since the trial court used the date of the accident to determine the applicability of R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, the trial court erred. Such error was not harmless as there was a genuine issue of material fact concerning when the renewal contract was entered into and when such contract began. This issue is material to determine whether R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, applied to the present case. If the new contract date was issued on December 7, 1994 and became effective on November 1, 1994, then R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, applied and appellee would be entitled to subrogation on the $100,000.00 settlement amount against a single per person policy limit of $100,000.00. However, if the new contract was issued on August 30, 1994, and became effective on September 9, 1994, then R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, would not apply, and appellee could have sought subrogation on the $100,000.00 settlement amount against two separate per person policy limits of $100,000.00. Schaefer,supra.
Moreover, based upon the fact that the trial court improperly applied R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, the trial court erred in granting appellee's motion for summary judgment regarding appellants' claim of bad faith. In Zoppo v. HomesteadIns. Co. (1994), 71 Ohio St.3d 552, the Ohio Supreme Court stated that an insurance company acts in bad faith in processing an insurance claim when it refuses to pay the claim without predicating such refusal upon a reasonable justification. Given that the insurance contract provision that limited the loss of consortium claim to a single per person policy limit could have been found unenforceable if R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, did not apply, a genuine issue of material fact remained concerning whether appellee had a reasonable justification with which to base its refusal to pay appellants' claims.
Appellants' first and second assignments of error are found to be with merit.
The judgment of the trial court is reversed and this cause is remanded for further proceedings according to law and consistent with this opinion.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED: EDWARD A. COX, PRESIDING JUDGE.