OPINION
This appeal, having been heretofore placed on the accelerated calendar, is being considered pursuant to App.R. 11.1(E) and Loc.R. 12. In accordance with Loc.R. 12(5), we elect to render our decision by full opinion.
Plaintiff-appellant Joseph Ruda, individually and in his capacity as executor of the estate of Valoria Ruda, appeals the order of the Wyandot County Court of Common Pleas entering summary judgment for defendant-appellee Colonial Insurance Company of California (hereinafter "Colonial").
This case arises from an automobile-train collision on February 17, 1995 that resulted in the death of the automobile's passenger, the plaintiff's daughter Valoria Ruda. On January 24, 1997, plaintiff filed a complaint in the Wyandot County Court of Common Pleas alleging inter alia negligence, wrongful death, and loss of consortium. Plaintiff named as defendants four parties: Scott Lear, the driver of the automobile; Consolidated Rail Company (hereinafter "Consolidated Rail"), owner-operator of the train; Timothy Doak, the conductor of the train; and Colonial, Valoria Ruda's automobile insurance carrier. At the time of the accident defendant Lear had automobile insurance provided by Progressive Casualty Insurance Company (hereinafter "Progressive") with state minimum liability limits of $12,500.00 per person and $25,000.00 per accident. Pursuant to the terms of that policy, Progressive awarded $12,500 to the plaintiff in settlement of the claim against defendant Lear.
Additionally, Valoria Ruda had a contract with defendant Colonial that provided uninsured/underinsured motorist coverage to her at the state minimum amounts, $12,500.00 per person and $25,000.00 per accident. On June 12, 1999, defendant Colonial filed a motion for summary judgment, arguing that it had no liability to the plaintiff as a matter of law because the liability limits of the Progressive policy were identical to the underinsurance limits of the Colonial policy. Defendant argued that that any claim made by plaintiff was subject to the $12,500.00 "each person" limit of underinsurance liability. Defendant also adopted the position that because Progressive had already paid $12,500.00 in liability insurance to the plaintiff, both the Colonial policy and former R.C. 3937.18(A)(2) required that amount to be set off from plaintiff's claim, leaving the plaintiff with no underinsurance recovery.
On July 6, 1999, plaintiff filed a memorandum contra and counter-motion for summary judgment, arguing that based on the plain language of the policy, plaintiff's claims were subject to the "each accident" limit of $25,000.00 rather than the $12,500.00 "each person" limit. Plaintiff further contended that under defendant's contract with the decedent, "each of the parents and siblings of the decedent * * * were separate insured and entitled * * * to the per accident limit for the damages they each suffered as a result of the wrongful death" of the decedent. Memorandum in Support of Plaintiff's Motion for Summary Judgment, at *6.
On August 3, 1998, the trial court entered an order granting summary judgment to defendant Colonial. On October 7, 1999, the trial court filed an entry recognizing that plaintiffs had settled claims against defendants Lear and Doak, and had previously dismissed their claim against Consolidated Rail. The court accordingly dismissed the claims against Lear and Doak, and noted that "all claims in the * * * case have now been disposed of." Plaintiffs now appeal the order of the court granting summary judgment to defendant Colonial, and assert a single assignment of error with the trial court's judgment:
 The trial court abused its discretion and committed reversible error prejudicial to plaintiffs-appellants and in favor of defendant-appellee, Colonial Insurance Company of California when the trial court overruled the plaintiffs-appellants motion for summary judgment and granted the defendant-appellee Colonial Insurance's motion for summary judgment, finding the defendant-appellee Colonial Insurance did not owe the estate of Valoria Ruda $12,500.00 under the terms of its contract of insurance that was in effect at the time of Valoria Ruda's death.
Appellate courts review summary judgment determinations denovo and do not grant deference to the trial court's determination. See, Schuch v. Rogers (1996), 113 Ohio App.3d 718,720. Accordingly, we apply the same standard for summary judgment as the trial court. See, Midwest Specialties, Inc. v. FirestoneTire Rubber Co. (1988), 42 Ohio App.3d 6, 8.
 [Summary judgment is proper] when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.
Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679,686-87. We begin our analysis with the observation that because the Colonial policy at issue in this case was entered into after the October 20, 1994 effective date of S.B. 20 but prior to the September 3, 1997 effective date of H.B. 261. It is therefore governed by the S.B. 20 version of R.C. 3937.18 (hereinafter "former R.C. 3937.18").[1] "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmer's Ins. Group ofCompanies (1998), 82 Ohio St.3d 281, syllabus. Former R.C.3937.18 provides, in relevant part:
 (A)(2) Underinsured motorist coverage * * * shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage * * * shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
* * * *
 (H) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Former R.C. 3937.18 (emphasis added).[2] We have previously recognized that former R.C. 3937.18 permits insurers to consolidate all claims stemming from the injury or death of one person in an automobile accident to a single, per person limit of coverage. See, e.g., Lippert v. Peace (April 23, 1999), Hancock App. No. 5-99-01, unreported at *3, 1999 WL 280384, discretionary appeal allowed at 86 Ohio St.3d 1466. However, plaintiff contends that former R.C. 3937.18(H) also permits insurance companies toprovide separate coverage for survivorship type claims. Plaintiff argues that nothing in the statute impedes that ability of insurers to draft policy language to provide separate coverage for such claims, and also contends that the underinsurance policy at issue in this case provides coverage for such claims up to the aggregate $25,000.00 "each accident" limit.
We agree with plaintiff's construction of the statute. The legislature's use of the word "may" in former R.C. 3937.18(H) unambiguously reveals the intent to permit insurers to offer separate coverage for survivorship and other derivative claims in addition to normal underinsurance coverage. See, e.g., State exrel. City of Niles v. Bernhard (1978), 53 Ohio St.2d 31, 34-5. We concur with the Seventh District Court of Appeals that "[a]lthough [former] R.C. 3937.18 sets forth the minimum requirements for underinsurance motorist coverage, the statute does not operate to preclude and insurer from providing broader coverage than that required by law." King v. Western Res. Mut. Cas. Co. (March 15, 1999), Monroe App. Nos. 805, 806, 807, unreported at *4, 1999 WL 148376, discretionary appeal allowed at 86 Ohio St.3d 1420. We therefore turn to the Colonial policy itself to determine whether it contains language sufficient to both consolidate plaintiff's wrongful death and survivorship claims and also to subject the consolidated claim to the single "each person" limit of $12,500.00.
The Colonial policy contains the following relevant exclusionary language:
 UNDERINSURED MOTORIST COVERAGE — OHIO LIMIT OF LIABILITY
 The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damage for bodily injury resulting from any one auto accident. (Emphasis added).
Plaintiff argues that foregoing excerpt does not contain any language that consolidates his survivorship and wrongful death claims. In interpreting the policy, we are guided by the general principle that insurance policies are to be construed liberally in favor of the insured. See, e.g., Holliman v. Allstate Ins.
(1999), 86 Ohio St.3d 414, 418. Any ambiguities are to be construed broadly to extend coverage to the insured. See id.
In previous cases, we have interpreted provisions similar to the one currently at issue. See Williams v. Carmean (May 6, 1998), Shelby App. No. 17-98-02, unreported at *2, 1998 WL 227174; Karrv. Borchardt (December 24, 1998), Seneca App. No. 13-98-36, unreported at *2, 1998 WL 896854, discretionary appeal allowed at86 Ohio St.3d 1405; Lippert v. Peace (April 23, 1999), Hancock App. No. 5-99-01, unreported at *3, 1999 WL 280384, discretionary appeal allowed at 86 Ohio St.3d 1466. However, the policies in each of those cases included provisions that expressly consolidated all claims. For example, in Williams, the policy included the following clause:
 The limit of liability shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident * * *.
Williams, Shelby App. No. 17-98-02 at *2 (emphasis added). The section entitled "Underinsured Motorist Coverage" of the policy at issue in this case does not contain similar "consolidation" language. Cf. Karr, Seneca App. No. 13-98-36 at *2; Lippert, Hancock App. No. 5-99-01 at *3. Moreover, other parts of the policy do contain language specifically consolidating wrongful death and survivorship claims. For example, the section of the policy entitled "Uninsured Motorist Coverage" contains the following paragraph:
 The limit for each person is the maximum for all damages including damages for care, loss of services and, loss of consortium arising out of bodily injury suffered by any person in any one accident. (Emphasis added).[3]
While we express no opinion as to whether the foregoing language is sufficient to consolidate all wrongful death and survivorship claims caused by uninsured motorists, we do believe that the failure of the insurer to contain similar language in the section of the policy labeled "Underinsured Motorist Coverage" creates an ambiguity that we must resolve in favor of the insured. Cf.Holliman, 86 Ohio St.3d at 418.
We therefore hold that the Colonial policy does not consolidate the plaintiff's wrongful death and survivorship claims, and that plaintiff may maintain a separate cause of action for each claim. Cf. Wood v. Shepard (1988), 38 Ohio St.3d 86, syllabus. We also conclude that the amount available for payment in this case is the "each accident" amount of $25,000.00, since plaintiff has at least two separate claims and by the plain language of the policy each individual claim is subject to the $12,500.00 "each person" limit. Finally, we conclude that the trial court erred in granting summary judgment to defendant Colonial, since even after the set off mandated by former R.C.3937.18(A)(2) of monies paid to the plaintiff under defendant Lear's liability policy, there remains $12,500.00 available for payment from the Colonial policy. See former R.C. 3937.18(A)(2).
For these reasons, plaintiff's sole assigned error is sustained. The order of the Wyandot County Court of Common Pleas granting summary judgment to defendant Colonial Insurance Company of California is reversed, and this case is remanded for further proceedings consistent with the foregoing opinion.
Judgment reversed and cause remanded.
HADLEY, P.J., and BRYANT, J., concur.
[1] A review of the policy reveals that its "original inception date" was October 31, 1994, and the policy amounts were amended effective January 20, 1995. Using either date, it is the S.B. 20 version of R.C. 3937.18(A)(2) that is the controlling law in this case. See Ross, 82 Ohio St.3d 281, syllabus; 1994 S.B. 20 (eff. 10-20-94).
[2] The plaintiff has not challenged the constitutionality of the S.B. 20 amendments to R.C. 3937.18 in this case. Cf. e.g.,Joseph v. CSX Trans. Co., et al. (March 18, 1999), Seneca App. No. 13-98-68, unreported, 1999 WL 180788, discretionary appeal allowed at 86 Ohio St.3d 1465.
[3] In Plott v. Colonial Insurance Co. (1998), 126 Ohio App.3d 416, the Fifth District Court of Appeals recognized that this language, which is also included in other sections of the policy at issue in this case, effectively consolidated all derivative claims and subjected them to the single "each person" limit. Seeid. at 419-20.