OPINIONS OF THE SUPREME COURT OF OHIO
    The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
    Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
    NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Aetna Life Insurance Company v. Schilling, Appellant; Lehman,
Appellee, et al.
[Cite as Aetna Life Ins. Co. v. Schilling (1993),      Ohio
St.3d     .]
Insurance benefits -- Provisions of R.C. 1339.63 as
    applied to contracts entered into before effective date of
    statute violate Section 28, Article II of the Ohio
    Constitution.
                             ---
The provisions of R.C. 1339.63, as applied to contracts
    entered into before the effective date of the statute,
    impair the obligation of contracts in violation of Section
    28, Article II of the Ohio Constitution.
                             ---
    (No. 92-1375 -- Submitted May 25, 1993 -- Decided August
25, 1993.)
    Appeal from the Court of Appeals for Licking County, No.
CA-3762.
    The facts of this case are not in dispute.
    Lawrence E. Schilling and appellant, Herma L. Schilling,
were married in 1955.  In 1969, Lawrence began working for
Owens-Corning Fiberglas Corporation ("Owens-Corning").  In
1975, Lawrence applied for and received life insurance coverage
under the terms of a group life insurance policy then in
existence between Owens-Corning and Aetna Life Insurance
Company ("Aetna").  The insurance was made available to
Lawrence as a benefit of his employment with Owens-Corning.
Lawrence designated appellant (his wife) as beneficiary of the
Aetna policy.
    On or about March 17, 1977, the marriage between Lawrence
and appellant ended in divorce.  The divorce decree did not
address the subject of Lawrence's Aetna life insurance coverage
or his designation of appellant as the life insurance
beneficiary.
    Subsequently, in May 1983, Lawrence's life insurance
coverage under the group policy was increased from $20,000 to
$70,000.  Lawrence retired from Owens-Corning in 1983, and his
life insurance coverage remained in full force and effect.

In December 1988, Lawrence entered into a common-law marital relationship with appellee, Molly F. Lehman. The validity of this marriage has been established by judgment of the Court of Common Pleas for Licking County, Probate Division.

On June 19, 1990, Lawrence died. His original designation of appellant as the beneficiary of his life insurance had remained unchanged. At the time of Lawrence's death, the group policy remained in full force and effect. Following Lawrence's death, appellant presented Aetna with a written demand for payment of the life insurance proceeds. Appellee also demanded payment, claiming a right to the proceeds by operation of R.C. 1339.63.

On October 2, 1990, Aetna filed an action for interpleader1 in the Court of Common Pleas for Licking County, naming, as defendants, appellant, appellee and the administrator of Lawrence's estate. Appellant responded to the complaint and claimed entitlement to the insurance proceeds as Lawrence's designated beneficiary. Appellee, Lawrence's surviving common-law spouse, responded to the complaint asserting a right to the proceeds by virtue of R.C. 1339.63. Aetna was dismissed from the lawsuit upon depositing the insurance proceeds into an interest-bearing account. The case then proceeded on the remaining parties' respective claims of entitlement to the funds.

Following trial, the trial court, applying the provisions of R.C. 1339.63, held that appellant was deemed to have predeceased Lawrence by operation of the statute and that, therefore, appellee was entitled to the life insurance proceeds as Lawrence's surviving common-law spouse. On appeal, the court of appeals affirmed the judgment of the trial court and rejected appellant's arguments that R.C. 1339.63, as applied to deprive appellant of the life insurance proceeds available under the Aetna group policy, violates Section 28, Article II of the Ohio Constitution.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Hardgrove & Plank, Rhett A. Plank and Robert P. Carlisle, for appellant.

C. Bernard Brush and Orval E. Fields II, for appellee.

Douglas, J.     R.C. 1339.63 provides, in part:

"(A) As used in this section:

"(1) 'Beneficiary' means a beneficiary of a life insurance policy, an annuity, a payable on death account, an individual retirement plan, an employer death benefit plan, or another right to death benefits arising under a contract.

"* * *

"(B)(1)  Unless the designation of beneficiary or the judgment or decree granting the divorce, dissolution of marriage, or annulment specifically provides otherwise, and subject to division (B)(2) of this section, if a spouse designates the other spouse as a beneficiary * * * and if * * * the spouse who made the designation * * * is divorced from the other spouse, obtains a dissolution of marriage, or has the marriage to the other spouse annulled, then the other spouse shall be deemed to have predeceased the spouse who made the

designation* * *, and the designation of the other spouse as a beneficiary is revoked as a result of the divorce, dissolution of marriage, or annulment."

R.C. 1339.63 became effective May 31, 1990, just twenty days before the decedent's death. The statute was enacted as part of Am.Sub.H.B. No. 346. Section 3 of the bill provides that the enactment "shall apply only to the estates of decedents who die on or after [May 31, 1990]." 143 Ohio Laws, Part III, 4566.

Appellant maintains that R.C. 1339.63, as applied in this case, violates Section 28, Article II of the Ohio Constitution, which provides, in part: "[t]he general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *." We agree with appellant's position that R.C. 1339.63 cannot be applied in a constitutional manner to effectively nullify Lawrence's designation of appellant as the beneficiary of the life insurance proceeds. Accordingly, we reverse the judgment of the court of appeals.

Lawrence obtained life insurance coverage from Aetna through his employer pursuant to the terms of a group life insurance contract. Technically, Lawrence might not have been a party to the contract since the group policy was issued to Owens-Corning by Aetna. However, Lawrence was a party to the group insurance arrangement, and his rights were governed by the group insurance contract. See, generally, Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 2 O.O.3d 297, 357 N.E.2d 44. In this regard, the Aetna group policy provided Lawrence, as an insured, the contractual right to designate his life insurance beneficiary. Section 6, Article VI of the group policy provides in part:

"An employee, whether or not employment has terminated, may designate a beneficiary, and from time to time change his designation of beneficiary, by written request filed at the headquarters of the Policyholder or at the Home Office of the Insurance Company. * * *

"Any amount payable to a beneficiary shall be paid to the beneficiary or beneficiaries designated by the employee, except that, unless otherwise specifically provided by the employee in his beneficiary designation:

"* * *

"(c) if no designated beneficiary survives the employee, or if no beneficiary has been designated, payment shall be made to the employee's widow or widower, if surviving the employee * * *[.]" (Emphasis added.)

Section 1, Article II of the policy provides that:

"If an employee shall die while Employee Coverage is in force for the employee, the Insurance Company shall pay, upon receipt of due proof of the death of such employee -- to the beneficiary determined in accordance with the terms of this policy -- the amount determined in accordance with the terms of this policy." (Emphasis added.)

Lawrence was insured under the group policy and exercised his right to designate appellant as the life insurance beneficiary well before the effective date of R.C. 1339.63. Under the terms of the policy, Lawrence had a contractual right to have Aetna pay death benefits to the beneficiary designated

by him so long as the policy remained in effect at the time of his death. Aetna had a corresponding contractual obligation to pay death benefits to the surviving beneficiary so designated. At the time of the decedent's death, all conditions for payment of the death benefits were satisfied and, therefore, Aetna was contractually bound to pay the insurance proceeds to appellant. However, R.C. 1339.63, if applied in this case, would essentially change the contract which existed prior to the effective date of the statute. In this regard, the provisions of R.C. 1339.63 would impermissibly impair the obligation of contract in violation of Section 28, Article II of the Ohio Constitution.

The effect of R.C. 1339.63 is to nullify a husband's or wife's designation of his or her spouse as the beneficiary of death benefits payable under contract where the marital relationship was terminated after the designation was made and if the designation or the judgment or decree of divorce, dissolution or annulment does not specifically provide otherwise. Lawrence died on June 19, 1990, just twenty days after the effective date of the statute. Therefore, Lawrence's designation of appellant as beneficiary would be revoked by operation of R.C. 1339.63, since Lawrence and appellant were divorced after the designation was made, and no specific provision was contained in the divorce decree or the beneficiary designation to specifically avoid the effect of the statute.2 In our judgment, application of R.C. 1339.63 in this case impermissibly interferes with Lawrence's contractual rights under the group policy. Therefore, appellant, as the designated beneficiary, has a clear right to the proceeds irrespective of the provisions of R.C. 1339.63, which cannot impair the obligation of contracts that existed prior to the effective date of the statute.

As early as 1823, in Smith v. Parsons (1823), 1 Ohio 236, 241, this court stated that: "when a law by which the parties to a contract are not bound, or which can not be considered as forming a part of the contract, or as creating a rule for its construction, is applied in its discharge, it may be said to impair its obligation in the sense of the constitution." Similarly, in the case of Goodale v. Fennell (1875), 27 Ohio St. 426, 432, this court stated, with respect to the constitutional prohibition against laws impairing the obligation of contracts: "[w]hen the contract is once made, the law then in force defines the duties and rights of the parties under it. Any change which impairs the rights of either party, or amounts to a denial or obstruction of the rights accruing by a contract, is obnoxious to this constitutional provision."

Today, we hold that the provisions of R.C. 1339.63, as applied to contracts entered into before the effective date of the statute, impair the obligation of contracts in violation of Section 28, Article II of the Ohio Constitution. We note, however, that contracts entered into on or after the effective date of R.C. 1339.63 are subject to the provisions of the statute.

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court with instructions to order the release of the funds

to appellant.

                                   Judgment reversed.

    Moyer, C.J., Resnick and Pfeifer, JJ., concur.
    A.W. Sweeney, Wright and F.E. Sweeney, JJ., dissent.

FOOTNOTES:
1    See Civ.R. 22.
2    It is interesting to note that the beneficiary designation
was made, and the divorce occurred, prior to the enactment of
R.C. 1339.63.  Therefore, for all practical purposes, the only
method of avoidance of R.C. 1339.63 in this case was for
Lawrence to have redesignated appellant as his beneficiary
between the time that Lawrence was placed on notice of the
effect of the statute (assuming that he was ever made aware of
the change in the law) and the date of his death.  As
indicated, Lawrence died just twenty days after the effective
date of the statute.

Aetna Life Ins. Co. v. Schilling.
    A. William Sweeney, J., dissenting.     In my view, the
majority opinion has seriously erred in according vested
contractual rights to a person whose contractual interest was
nothing more than an expectancy, solely dependent on the action
or inaction of another.  Therefore, I must respectfully yet
vigorously dissent from what I perceive to be a misapplication
of Section 28, Article II of the Ohio Constitution, as well as
a manifest injustice to the appellee-widow and surviving son.
    Even if it is assumed that decedent was a party to the
insurance contract, the majority's application of Section 28,
Article II of the Ohio Constitution is clearly erroneous since
it has long been the law of this state that the constitutional
provision in issue was designed, inter alia, to "'protect
vested rights from invasion.'"  (Emphasis added.)  Kumler v.
Silsbee (1882), 38 Ohio St. 445, 447, quoting New Orleans v.
Clark (1877), 95 U.S. 644, 655, 24 L.Ed. 521, 528; State ex
rel. Ogelvee v. Cappeller (1883), 39 Ohio St. 207, 215.
    Moreover, "[a] right, not absolute but dependent for its
existence upon the action or inaction of another, is not basic
or vested ***." (Emphasis added.)  Hatch v. Tipton (1936), 131
Ohio St. 364, 6 O.O. 68, 2 N.E.2d 875, paragraph two of the
syllabus.  See, also, Buehler v. Buehler (1979), 67 Ohio App.2d
7, 9, 21 O.O.3d 330, 331, 425 N.E.2d 905, 906-907.
    Based on these long- tanding precedents, it is plain that
Section 28, Article II has no application to alleged
contractual rights which are not vested.  As pointed out by
appellee, the decedent had no vested substantive, contractual
rights to the policy in issue other than the privilege granted
to him by his employer to designate the beneficiary as long as
the policy remained in effect.  However, even the beneficiary
designation was not a vested right of decedent's, inasmuch as
the policy could be terminated at the whim of the employer or
the insurance company.  If decedent had no vested rights in the
subject life insurance policy, then certainly appellant, his
ex-spouse, had none either.
    Even assuming, arguendo, that Section 28, Article II of
the Ohio Constitution is germane to the instant cause, the full
language of the constitutional provision tempers the

prohibitory thrust of the impairment of contracts clause:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

The foregoing language, as applied to the instant case and R.C. 1339.63, was cogently explained by appellee in her merit brief before this court as follows:

"What can be more clear than to create a statutory presumption of the manifest intentions of the parties to a divorce, dissolution, or annulment when the spousal beneficiary designation or decree of divorce, dissolution or annulment is silent or has failed to provide what happens upon divorce from the named spousal beneficiary, than to have the state step in and declare the parties' intentions[?] If they do not want the statutory interpretation, all they have to do is specifically provide otherwise. They are not forced to live with this presumption nor has it been crammed down their throats; but rather, to prevent the often inequitable results arising from procrastination, lapsed memories, or broken promises that cannot be corrected once death has occurred, the legislature has seen fit to bestow its guidance on the conduct of human affairs that more aptly provides the proper remedy which had eluded and left the courts to interpret contracts under existing insurance or divorce case law for an ever burgeoning constituency of divorced citizens."

By enacting R.C. 1339.63, the General Assembly has created an equitable presumption to ameliorate the perceived unfairness of prior Ohio case law, see, e.g., Cannon v. Hamilton (1963), 174 Ohio St. 268, 22 O.O.3d 331, 189 N.E.2d 152, that allowed ex-spouses to reap the benefits of insurance proceeds where the deceased failed to change the beneficiary designation, and where the divorce or dissolution decree was silent with respect to insurance policies in effect at that time.

In my view, R.C. 1339.63 not only passes constitutional muster, it is more fair and more equitable than prior Ohio law. However, under the majority opinion herein, a veritable windfall inures to appellant, who presumably already received her fair share of the marital assets when she divorced decedent thirteen years before his death. This is precisely the type of inequity R.C. 1339.63 intended to rectify; but the majority opinion ends up penalizing decedent's widow and child by exalting a constitutional provision that is of questionable relevance to the cause sub judice.

In any event, the logic of the majority's analysis could lead to anomalous results in other contexts. For example, R.C. 2105.19 prohibits a murderer from collecting on the victim's policy in which he has been designated as the beneficiary. However, if such a law didn't exist, enactment of such a statute subsequent to the victim's designation of the murderer as beneficiary could result in an unconstitutional impairment of contract rights under the majority's reasoning. Once again, I point out the full language of Section 28, Article II which,

assuming its applicability, permits the General Assembly to impair contracts where justice and equity demand such an impairment.

In sum, I believe that since appellant, on R.C. 1339.63's effective date, had no vested rights as beneficiary to the instant life insurance policy, Section 28, Article II of the Ohio Constitution has no relevance to the outcome of this case. Since decedent died subsequent to the effective date of R.C. 1339.63, the statutory presumption that appellant predeceased decedent ensued, thus preventing application of prior Ohio law to the contrary.

For these reasons, I would affirm the judgment of the court of appeals below.

Wright and F.E. Sweeney, JJ., concur in the foregoing dissenting opinion.


Aetna Life Ins. Co. v. Schilling.

Wright, J., dissenting. I am puzzled as to why the majority cites no authority for the ringing syllabus law announced today -- there is, in fact, no dearth of cases inveighing against the use of the state or federal police powers to interfere with a citizen's "right" to contract. The lead case in this area, of course, was Lochner v. New York (1905), 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937, in which the court, using the same general premise embraced today by my colleagues in the majority, struck down a law limiting bakers to a sixty-hour work week.

Lochner is a notorious case in American legal history. One author attributes this notoriety to "the widespread assumption that the case represents the corruption of judicial power in at least two respects. First, by invoking an ostensible right to liberty of contract to trump a maximum hours law for bakers, the majority took the unprecedented step of constitutionalizing an ethos of market freedom at a time when it was a matter of political dispute whether an unregulated market was always the best policy. Second, in announcing that laws interfering with liberty of contract would be upheld only if (in the opinion of the Court) they were 'reasonable and appropriate' attempts to promote 'the morals, the health or the safety of the people,' Justice Peckham promulgated a doctrine that illegitimately gave the justices the authority to second-guess legislative conclusions regarding effective public policy -- an authority that the members of the majority exercised with a vengeance when they gave their blessing to those sections of the Bakery Act that related to the conditions of the workplace as 'reasonable and appropriate exercises of the police power of the State' but struck down those sections relating to working hours as merely 'labor laws,' unrelated to 'the interests of the public' and therefore 'unnecessary and arbitrary interferences' with personal liberty." Gillman, The Constitution Besieged: The Rise and Demise of Lochner Era Police Powers Jurisprudence (1993) 19.

Dissenting in Lochner, Justice Oliver Wendell Holmes articulated criticisms which can just as easily be voiced against today's decision: "It is settled by various decisions of this court that state constitutions and state laws may regulate life in many ways which we as legislators might think

as injudicious or if you like as tyrannical as this, and which equally with this interfere with the liberty to contract. Sunday laws and usury laws are ancient examples. A more modern one is the prohibition of lotteries. The liberty of the citizen to do as he likes so long as he does not interfere with the liberty of others to do the same, which has been a shibboleth for some well-known writers, is interfered with by school laws, by the Post Office, by every state or municipal institution which takes his money for purposes thought desirable, whether he likes it or not." Id., 198 U.S. at 75, 25 S.Ct. at 546, 49 L.Ed. at 949.

I could have joined the majority but for the fact that Lochner, its progeny, and the premises on which they were based were consigned to outer darkness in the mid- to late 1930s over the outraged cries of the last of the "Four Horsemen," Justice James Clark McReynolds. Typical of his views was his dissent in the Gold Clause Cases.3 A McReynolds biographer explained:

"The Gold Clause Cases all involved the same basic question: could the federal government oblige creditors to accept payment in dollars rather than in gold as was specified in their contracts, notes, bonds, or other obligations? A majority of the Court answered yes. It chose to view the question before it as one of power rather than wisdom. In its judgment Congress had the power to compel acceptance of paper dollars. ***

"The crowded courtroom had been tense before the majority delivered its opinion as those present nervously awaited announcement of the momentous decision. Justice Stone finished reading his concurring opinion at 1:40 p.m.; and the crowd, silent and tense once again, turned its attention to McReynolds, who was to read the dissent. The tall, rugged-looking Justice, appearing grimly determined, pushed aside his written dissent. His piercing blue eyes flashing, he began to speak. His voice quivered at first; but as he spoke, he gathered momentum, raising his high-pitched voice frequently to emphasize his points. He lashed out, beginning with the flat declaration that he had privately communicated to his friend weeks earlier: 'The Constitution is gone.' He elaborated:

"'The guarantees heretofore supposed to protect against arbitrary action, have been swept away. The powers of Congress have been so enlarged that now no man can tell their limitations. Guarantees heretofore supposed to prevent arbitrary action are in the discard.'

"***

"'In harmony with policy sanctioned for many years, individuals entered into contracts which they expected would protect them against a fluctuating currency -- a depressed currency, if you will. Such currency is not new; it has been known for centuries. Nero used it. Long ago it was familiar in France.

"'Many men entered into contracts, perfectly legitimate, and undertook to protect themselves. The lender against depreciated currency, the borrower possibly against an appreciated one. Under these obligations millions were loaned. Railroads, canals, many great enterprises were begun and their bonds sold throughout the world. With them went

solemn promises that takers would receive in payment money like that furnished by them.  Now we are told  Congress can sweep all this away; declare such payments against public policy!'
        "***

        "Concluding at last, now more in sorrow than in anger, he could only weep: 'Shame and humiliation are upon us.  Moral and financial chaos may confidently be expected.'"  (Footnotes omitted.)  Bond, I Dissent: The Legacy of Chief Justice James Clark McReynolds (1992) 91-92.

        Now there may have been something to McReynolds's views, but, plainly speaking, his posture concerning the sanctity of contracts is now not only out of the mainstream of the law, it is on dry land.  I venture to say that any law student could produce hundreds of statutes contained in our Revised Code that interfere with a citizen's right to contract.  See, e.g., R.C. Chapter 1707 (regulating securities transactions); R.C. 4111.02 (requiring and setting minimum wage); R.C. 4117.03 (providing collective bargaining rights to public employees).  Until today I've not seen this court wander back to the Lochner era. Today's decision should certainly send the organized Bar scrambling to use Section 28, Article II of the Ohio Constitution the next time we hear arguments concerning a securities violation or a case involving the Public Employees' Collective Bargaining Act.  Justice McReynolds would have been most pleased.

        This decision hints at a return to the days of result-oriented jurisprudence hidden under the guise of a "constitutional right" to contract without government interference.  It is simply not our job to decide whether a statute is, normatively, good or bad.  The majority may think that R.C. 1339.63 is bad or that it is bad as applied to this case.  But it should not parlay its subjective opinion into constitutional law.  That is exactly what the Lochner court did and that is exactly what American judges and lawyers rejected over fifty years ago.

        There is yet another major flaw in the majority opinion: Schilling's ex-wife does not have standing to complain that her rights have been impaired.  The majority reasons that because R.C. 1339.63 interferes with Schilling's contractual rights, it ipso facto interferes with his ex-wife's rights.  That is truly an illogical leap.  Prior to the effective date of R.C. 1339.63,  Schilling's ex-wife did not have more than an expectancy interest in the insurance proceeds.  She did not have a contractual relationship with either Aetna Life Insurance Company or Owens-Corning Fiberglas Corporation which could have been impaired by the operation of R.C. 1339.63. Because Schilling had reserved the right to change the beneficiary of the policy, his ex-wife was not a third-party beneficiary to the insurance contract; she never had a vested interest in the insurance proceeds.  See Katz v. Ohio Natl. Bank (1934), 127 Ohio St. 531, 191 N.E. 782, paragraph one of the syllabus; 4 Couch on Insurance 2d (1984), Section 27:59.

        Section 28, Article II of the Ohio Constitution forbids the impairment of contract -- not the impairment of expectancy.  The former Mrs. Schilling did not suffer a constitutionally cognizable injury; she does not have standing to complain that her "right to contract" was impaired.  Rather

than dwell on this issue further, I refer the reader to Justice A. W. Sweeney's analysis of this particular problem in his dissent, with which I concur.

I cannot fathom why the majority falls all over itself to protect Schilling's ex-wife, who divorced him sixteen years ago, instead of showing some concern for his widow and the decedent's young child.  Finally, I must say that the majority's holding and the rationale for its holding turn much of the law dealing with life insurance on its head.

Accordingly, I respectfully dissent.

FOOTNOTES:

3  Norman v. Baltimore & Ohio RR. Co. (1935), 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885; Perry v. United States (1935), 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912; Nortz v. United States (1935), 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907.