DOE *v*. RONAN, SUPERINTENDENT, ET AL.

[Cite as *Doe v. Ronan*, 127 Ohio St.3d 188, 2010-Ohio-5072.]

*As applied to employment contracts entered into by school districts governed by R.C. Chapter 124, R.C. 3319.391 and Ohio Adm.Code 3301-20-01 do not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing laws that impair the obligation of contracts — R.C. 3319.391 does not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing retroactive laws.*

(No. 2009-2104 — Submitted June 8, 2010 — Decided October 26, 2010.)

ON ORDER from the United States District Court, Southern District of Ohio, Western Division, Certifying Questions of State Law, No. 1:09cv243.

_____

SYLLABUS OF THE COURT

1.  As applied to administrative-employment contracts entered into by school districts governed by R.C. Chapter 124, R.C. 3319.391 and Ohio Adm.Code 3301-20-01 do not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing laws that impair the obligation of contracts.

2.  R.C. 3319.391 does not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing retroactive laws.

_____

CUPP, J.

{¶ 1}  This case comes to us as two certified questions of state law from the United States District Court for the Southern District of Ohio, Western

Division. For the reasons that follow, we conclude that contractual obligations in administrative-employment contracts entered into by school districts governed by R.C. Chapter 124 are not impaired by R.C. 3319.391 and Ohio Adm.Code 3301-20-01, and R.C. 3319.391 is not a retroactive law.

## I. Facts

{¶ 2} According to the order certifying the questions to this court and the facts agreed upon by the parties in their briefs, John Doe,[1] petitioner, was convicted in 1976 of drug trafficking in violation of R.C. 2925.03 and spent three years in a correctional facility. After he was released, Doe obtained a college degree, became a licensed social worker, and was certified as a chemical-dependency counselor. In 1997, Doe's conviction was expunged pursuant to R.C. 2953.32. Doe has had no other criminal convictions.

{¶ 3} In 1997, Doe began his employment with respondent Cincinnati Public School ("CPS") as a drug-free-school specialist. In 2002, Doe began to work in an administrative capacity as a hearing officer. In this position, Doe's only direct contact with students was at administrative hearings, and the students' guardians were also present at those hearings.

{¶ 4} Doe entered into a two-year administrative-employment contract with CPS in July 2008, with the two-year term beginning on August 1. The employment contract was made "subject to confirmation of appropriate state certification." Beginning in 2008, this confirmation process required Doe to submit to a background check. This background-check requirement previously applied only to licensed[2] positions, but legislation enacted in 2007 extended it to include administrative employees within the school district. R.C. 3319.39 and

---

1. The district court granted plaintiff's motion to proceed under a pseudonym because it determined that to pursue the lawsuit, the plaintiff would be compelled to disclose intimate information and that a pseudonym would prevent the public from tying that information to the plaintiff.

2. The term "license" is used herein consistently with the definition in R.C. 3319.31.

3319.391, 2007 Sub.H.B. No. 190, eff. Nov.14, 2007 ("H.B. 190"). H.B. 190 also authorized respondent Ohio Department of Education ("ODE") to promulgate administrative rules related to the background-check process, including rules specifying circumstances under which persons with certain convictions could still be hired. R.C. 3319.39(E).

{¶ 5} In November 2008, CPS notified Doe that his 32-year-old drug-trafficking conviction was discovered during the background check.[3] CPS further advised Doe that the same recently enacted legislation that now required CPS to conduct background checks on administrative employees also required CPS to terminate its employment relationship with Doe because of the prior conviction.

{¶ 6} Doe filed suit on April 3, 2009, in the Hamilton County Court of Common Pleas. Doe alleged that CPS breached the July 2008 employment contract and that the recently enacted legislation expressed in H.B. 190 violated, among other things, the Contracts Clauses of the United States and Ohio Constitutions, the Ex Post Facto Clause of the United States Constitution, and the Retroactivity Clause of the Ohio Constitution. CPS removed the case to the federal district court pursuant to Section 1441, Title 28, U.S.Code, and on April 24, 2009, Doe filed an amended complaint in federal court. Respondent Mary Ronan was the interim superintendent at the time the amended complaint was filed.

{¶ 7} Thereafter, Doe filed a motion to certify his state-based retroactivity and contract-impairment claims as state-law questions. The federal

---

3. When an offense is expunged, the record is sealed. R.C. 2953.32(C). However, inspection of sealed records is permitted when a school board is conducting a background check. R.C. 2953.32(D)(8).

district court granted the motion, and this court accepted the certified questions.[4] 124 Ohio St.3d 1440, 2010-Ohio-188, 920 N.E.2d 371.

## II. Legislation and Regulations

{¶ 8} For many years, this state has required criminal background checks for licensed and certificated school-district employees who have responsibility for the care, custody, and control of a child. See former R.C. 3319.39(A)(1), Am.Sub.S.B. No. 38, 145 Ohio Laws, Part I, 367, 383, eff. Oct. 29, 1993 ("S.B. 38"). If the background check uncovered a conviction of an offense listed in former R.C. 3319.39(B)(1)(a), the school district was required to release that employee from employment, unless the "standards in regard to rehabilitation" were met. Former R.C. 3319.39(B)(1) and (E), S.B. 38. In keeping with the ODE's concern that persons who have drug-trafficking convictions on their record may jeopardize the health, safety, or welfare of students, no rehabilitation was available under the administrative regulation for a licensed employee who committed a drug-trafficking offense under R.C. 2925.03. Former Ohio Adm.Code 3301-20-01(B)(1), 1993-1994 Ohio Monthly Record 1257, eff. Mar. 4, 1994, and 3301-20-01(E)(1)(c) and (E)(2)(e), 2005-2006 Ohio Monthly Record 1261, eff. Sept. 23, 2005.

---

4. {¶ a} The certified questions of law are as follows:

{¶ b} "I. [Do] Ohio Revised Code § 3319.391 and Ohio Administrative Code § 3301-20-01 violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution?"

{¶ c} "II. [Do] Ohio Revised Code § 3319.391 and Ohio Administrative Code § 3301-20-01 violate the Contract Clause of Article II, Section 28 of the Ohio Constitution?"

{¶ d} The district court's certified question pertaining to the retroactivity question, however, does not match the allegations in the amended complaint. In the amended complaint, Doe alleged that both R.C. 3319.391 and R.C. 3319.39 were unconstitutionally retroactive. Further, Doe did not assert that now-former Ohio Adm.Code 3301-20-01 was unconstitutionally retroactive.

{¶ e} We are unclear as to the rationale behind the district court's phrasing of the question regarding unconstitutional retroactivity and why the certified question does not comport with the allegations in Doe's amended complaint. In order to avoid rendering an advisory opinion on the question whether Ohio Adm.Code 3301-20-01 is unconstitutionally retroactive, we limit our discussion to the issues presented in the amended complaint, but we decline to address whether R.C. 3319.39 is unconstitutionally retroactive, because this issue was not briefed by the parties.

**{¶ 9}** In 2007, H.B. 190 expanded the background-check statutes to require, among other things, criminal-background checks for administrative, or nonlicensed, school-district employees. Former R.C. 3319.391(A), H.B. No. 190. The list of enumerated offenses in R.C. 3319.39(B)(1) and the effect that a conviction of one of the enumerated offenses had on an employee's employment within a district were not revised. Former R.C. 3319.391(C), H.B. 190 (stating that a person convicted of an offense listed in R.C. 3319.39(B)(1) "shall not be hired or shall be released from employment" unless the person meets the rehabilitation standards promulgated by the ODE pursuant to R.C. 3319.39(E)); and former R.C. 3319.39(B)(1)(a), H.B. 190 (enumerated offenses not revised in H.B. 190). Thus, an R.C. 2925.03 drug-trafficking offense remained an enumerated offense, and an employee who had been convicted of such an offense could not be employed by the school district unless the rehabilitation standards were met.

**{¶ 10}** Prior to August 27, 2009, the ODE had promulgated only one regulation to address how a person with a prior conviction of an enumerated offense could be rehabilitated, allowing that person to be employed with the school district. However, the regulation provided that for a conviction of an R.C. 2925.03 drug-trafficking offense, no rehabilitation was available to relieve a person from employment disqualification. Former Ohio Adm.Code 3301-20-01(E)(1)(c) and (A)(11), 2005-2006 Ohio Monthly Record 1261, eff. Sept. 23, 2005.

**{¶ 11}** Effective August 27, 2009, the ODE revised its background-check regulations to respond to the 2007 revisions to the statutes. Rather than have one regulation apply to all persons subject to a background check, the ODE promulgated two regulations: one applicable to employees who hold positions that require licenses, and one applicable to employees who hold nonlicensed positions. Both of the regulations detail how a person with a conviction of an enumerated

offense may demonstrate the person's rehabilitation to relieve the person from employment disqualification with a school district. Ohio Adm.Code 3301-20-01(E) and 3301-20-03(D).

{¶ 12} The regulation that applies to licensed positions is essentially a continuation of the original, pre-August 2009 ODE regulation. Ohio Adm.Code 3301-20-01. In this regulation, the prior rule with respect to an R.C. 2925.03 drug-trafficking offense is maintained: no rehabilitation is permitted. Ohio Adm.Code 3301-20-01(E)(1) and (A)(10)(c).

{¶ 13} The second regulation created by the ODE was new and applied to nonlicensed positions within a school district. Ohio Adm.Code 3301-20-03. For these positions, the rehabilitation rule for R.C. 2925.03 drug-trafficking offenses is different. If the drug-trafficking offense occurred within ten years of the criminal-record check, no rehabilitation is permitted. Ohio Adm.Code 3301-20-03(D)(1) and (A)(6)(e). But if the person committed the drug offense more than ten years before the criminal-record check, a district may employ that person if the rehabilitation conditions contained in Ohio Adm.Code 3301-20-03(D) are met. Ohio Adm.Code 3301-20-03(A)(6)(e). But even if a person meets the rehabilitation conditions so that the school district may deem that person rehabilitated, a "district maintains the discretion whether to employ or retain in employment [that] individual." Ohio Adm.Code 3301-20-03(D).

### III. Analysis

{¶ 14} Doe argues that R.C. 3319.391 and Ohio Adm.Code 3301-20-01 unconstitutionally impaired his employment contract with CPS. Doe also argues that R.C. 3319.391 is unconstitutionally retroactive. After consideration of the arguments presented in this case, we cannot agree with Doe.

*A. Contract Impairment*

{¶ 15} The Ohio Constitution provides that the "general assembly shall have no power to pass * * * laws impairing the obligation of contracts." Section

28, Article II, Ohio Constitution. This provision applies to contracts that "existed prior to the effective date of the statute [at issue in the litigation]." *Aetna Life Ins. Co. v. Schilling* (1993), 67 Ohio St.3d 164, 168, 616 N.E.2d 893. In contrast, "contracts entered into *on or after* the effective date of [a statute] are subject to the provisions of the statute." (Emphasis sic.) Id.

{¶ 16} A two-part test has been established to determine whether a statute unconstitutionally impairs a contract. The first question is whether the legislation at issue operates as a substantial impairment of a contractual relationship. *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 77, 25 OBR 125, 495 N.E.2d 380. If the answer is yes, the next question is whether the legislation is reasonable and necessary to serve an important public purpose. Id. at 79.

{¶ 17} When CPS advised Doe that it was terminating his 2008 employment contract for the sole reason of Doe's 1976 expunged drug-trafficking conviction, it did so in accordance with the requirements of the 2007 revisions to the background-check legislation. Doe not only claims that R.C. 3319.391 unconstitutionally impaired his 2008 employment contract with CPS, but he further asserts that applying the administrative regulation in effect at the time of his termination notice compounds the constitutional infirmity. Ohio Adm.Code 3301-20-01, 2005-2006 Ohio Monthly Record 1261, eff. Sept. 23, 2005. Doe maintains that application of this administrative regulation to his circumstance is inappropriate because it was promulgated when only licensed school-district employees were subject to criminal-record checks. According to Doe, if the revised August 2009 regulation applicable to nonlicensed school-district employees had been promulgated sooner than it was following R.C. 3319.391's effective date, he would have met the new rehabilitation standard for nonlicensed employees and could have remained employed by CPS. Ohio Adm.Code 3301-20-03(A)(6)(e) and (D).

**{¶ 18}** The General Assembly has enacted detailed statutes regulating the employment of school employees. See R.C. Chapter 3319. When an employment contract between a school district and its employee is made pursuant to these statutes, that contract must be construed as though the statutes are incorporated into the contract and become implied terms and conditions of any contract or contractual right. See, e.g., *Jacot v. Secrest* (1950), 153 Ohio St. 553, 558, 42 O.O. 31, 93 N.E.2d 1, quoting *Banks v. De Witt* (1884), 42 Ohio St. 263, paragraph two of the syllabus (" 'A contract made in pursuance of a statute or resolution, must be construed as though such statute or resolution had been incorporated into such contract' ").[5] In this case, the 2008 employment contract between Doe and CPS was made "subject to confirmation of appropriate state certification." Passing a statutorily mandated background check is necessary "state certification" and is therefore a condition that must be met before obligations in the contract become effective. In recognition of this condition precedent, all prior and current versions of the background-check legislation permit an employee to be conditionally employed until the results of the background check are obtained. See, e.g., former R.C. 3319.39(B)(2), S.B. 38, eff. Oct. 29, 1993, and former R.C. 3319.39(B)(2), H.B. 190, eff. Nov. 14, 2007.

---

5. The dissent claims that the incorporation of present statutory law into a contract is legal artifice. To the contrary, "[i]t is an elementary principle that any law relating to a contract which is in existence at the time of the execution of the contract becomes a part of such contract." *E. Mach. Co. v. Peck* (1954), 161 Ohio St. 1, 6-7, 52 O.O. 463, 117 N.E.2d 593; *Bricker v. Preble Shawnee Local School Dist. Bd. of Edn.*, 12th Dist. No. CA2007-10-020, 2008-Ohio-4964, ¶ 15; *Eastwood Local School Dist. Bd. of Edn. v. Eastwood Edn. Assn.*, 172 Ohio App.3d 423, 2007-Ohio-3563, 875 N.E.2d 139, ¶ 27; *Labate v. Natl. City Corp.* (1996), 113 Ohio App.3d 182, 185, 680 N.E.2d 693. It is also " 'elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, 857 N.E.2d 583, ¶ 18, quoting *Bell v. N. Ohio Tel. Co.* (1948), 149 Ohio St. 157, 158, 36 O.O. 501, 78 N.E.2d 42; *Darwin Limes, L.L.C. v. Limes*, 6th App. No. WD-06-049, 2007-Ohio-2261, ¶ 25. Finally, this court has held in the context of subrogation rights that the statutory "provisions must control, regardless of the terms and conditions written into the policy by the contracting parties." *Verducci v. Cas. Co. of Am.* (1917), 96 Ohio St. 260, 265, 117 N.E. 235. Thus, applying the principle that existing statutory provisions are incorporated into a contract is recognition of a basic legal concept of longstanding and accepted use.

**{¶ 19}** Doe was conditionally employed pending the results of his background check. When these results indicated that Doe failed to meet the state-certification requirement, Doe was unable to meet the condition precedent that would have triggered CPS's obligation to perform the contract. Consequently, the contract between CPS and Doe failed to become binding.

**{¶ 20}** We further note that Doe and CPS executed the July 2008 employment contract eight months after the effective date of the provisions of H.B. 190, which imposed the new background-check requirements. Because Doe's 2008 employment contract with CPS was executed after the date the statutory change became effective, the new background-check requirements and the employment-disqualification standards of Ohio Adm.Code 3301-20-01 became incorporated as implied terms and conditions of Doe's contract. Thus, Doe cannot demonstrate that R.C. 3319.391 impaired his employment contract with CPS, because there was no contract between Doe and CPS to substantially impair.

**{¶ 21}** Doe's reliance on R.C. 3319.081 to establish that his employment contract was a continuing contract is misplaced. R.C. 3319.081 applies to school districts that are not governed by R.C. Chapter 124. CPS, however, is governed by R.C. Chapter 124. R.C. 124.01(A) and 3319.081. Thus, there is no continuing contract under R.C. 3319.081. Moreover, a public employee who meets the classified-service criteria of R.C. 124.11(B) does have protection from termination without specific cause, as defined in R.C. 124.34(A). One of the specific causes for which an employee can be terminated, however, is the conviction of a felony drug-abuse offense under R.C. 2925.03. R.C. 124.34(A)(2). Because the conviction was under R.C. 2925.03, it falls within the purview of R.C. 124.34(A), and Doe has no statutory right to continued employment.

**{¶ 22}** Doe also claims that application of the pre-August 2009 administrative rule to his circumstance impaired his 2008 employment contract with CPS. Had Ohio Adm.Code 3301-20-03 been promulgated more quickly upon the enactment of H.B. 190, Doe's R.C. 2925.03 drug-trafficking conviction would not have constituted a nonrehabilitative offense, and he could likely have met the conditions to show rehabilitation so that CPS could have maintained its employment relationship with him. Ohio Adm.Code 3301-20-03(A)(6)(e) and (D).

**{¶ 23}** Nonetheless, these laws reflect the General Assembly's conclusion that the health, safety, and welfare of students required an expansion of the background-check laws to include nonteaching employees, e.g., administrators, cafeteria workers, custodians, and maintenance personnel. Unfortunately, delay is often an inherent characteristic of the rulemaking process. The effect that the delay in the administrative rulemaking process had on Doe's career is regrettable. Doe's past experiences and rehabilitation appear to have made him especially qualified for the duties of the position for which he was hired, and Doe claims in his amended complaint that he has received either an "acceptable" or "accomplished" job evaluation every year since he became employed at CPS. When his conviction was expunged in 1997, Doe was found to be rehabilitated. The district court found that Doe has been "a model citizen since being released from jail." Regardless, the ODE acted pursuant to its statutory grant of discretionary rulemaking authority and was under no obligation to amend the Administrative Code to make different rehabilitation provisions for nonlicensed positions. R.C. 3319.39(E) and 3319.391(C).

**{¶ 24}** Based on the foregoing, the revisions to the background-check statutes and corresponding administrative regulations did not substantially impair the contractual relationship between Doe and CPS; they merely prevented Doe from being able to meet the condition precedent of the contract.

*B. Retroactivity*

**{¶ 25}** The Ohio Constitution also provides that the "general assembly shall have no power to pass retroactive laws." Section 28, Article II, Ohio Constitution. A determination that a law is unconstitutionally retroactive involves a two-step inquiry. If the statute is expressly retroactive and is substantive, as opposed to merely remedial, the statute violates the proscription against retroactive laws. *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 13.

**{¶ 26}** Doe asserts that the background-check legislation is unconstitutionally retroactive. In Doe's view, his vested right in continued employment was impaired when the General Assembly enacted R.C. 3319.391 and caused nonlicensed school-district employees to be terminated from current employment if a background check disclosed a criminal conviction that predated the employment relationship.

**{¶ 27}** Doe's contention notwithstanding, the background-check legislation in R.C. 3319.391 is prospective in application. This legislation simply imposed a new restriction on the school district regarding the qualifications of persons it could employ after a specific date, with a focus on those persons who have had felony convictions. This legislation does not go back to the date of the employee's initial hire, terminate that person effective as of the hire date, and eliminate any of that person's accrued benefits. Doe has not been deprived of any pay, retirement credit, or other benefits he accrued during his tenure with CPS. Instead, the conduct that the background-check legislation prohibits, i.e., continued employment after a disqualifying criminal-background check, occurs only after the effective date of the statute, November 14, 2007.

**{¶ 28}** Even if we did consider the statute to be expressly retroactive, we have already concluded in our contract-impairment analysis that R.C. 3319.391 does not impair, in Doe's circumstances, any vested right to continued

11

employment. In view of the foregoing, we conclude that R.C. 3319.391, as expressed in H.B. 190, is not expressly retroactive, did not affect a vested right, and thus does not violate the retroactive-law proscription in Section 28, Article II of the Ohio Constitution.

## IV. Conclusion

{¶ 29} Based on the above discussion, we conclude that as applied to administrative-employment contracts entered into by school districts governed by R.C. Chapter 124, R.C. 3319.391 and Ohio Adm.Code 3301-20-01 do not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing laws that impair the obligation of contracts. Further, we conclude that R.C. 3319.391 does not violate the provision in Section 28, Article II of the Ohio Constitution that prohibits the General Assembly from passing retroactive laws.

So answered.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., and PFEIFER, J., concur in part and dissent in part.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 30} While I sympathize with Doe's plight, the law is clear, and I concur in the majority's disposition of the two narrow legal questions certified to us by the district court.

{¶ 31} Although we have resolved the federal court's legal questions under the Ohio Constitution, I believe that on remand the court may resolve this case by resorting to the doctrine of relation back. Under this doctrine, "an act done at a later time is, under certain circumstances, treated as though it occurred at an earlier time." Black's Law Dictionary (8th Ed.1999) 1314. This doctrine

applies to the amendments of pleadings, see Civ.R. 15(C), but I believe that it should apply here in the interest of equity.

{¶ 32} The Ohio Department of Education had statutory authority to formulate the rules to carry out the legislative intent of 2007 Sub.H.B. No. 190, eff. Nov. 14, 2007 ("H.B. 190"). R.C. 3319.39(E). The department promulgated Ohio Adm.Code 3301-20-03 to carry out the legislative intent of H.B. 190. Unfortunately, Doe fell into the gap between enactment of the new law and the department's regulations in response to the 2007 statutory revisions. The parties agree that had the 2009 regulation been in effect, Doe would have remained in his position, because he had been rehabilitated. Thus, I believe that the regulation should relate back to the statute's enactment.

{¶ 33} Courts must give due deference to an agency's interpretation and implementation of the law. *State ex rel. Saunders v. Indus. Comm.,* 101 Ohio St.3d 125, 2004-Ohio-339, 802 N.E.2d 650, ¶ 41; *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad* (2001), 92 Ohio St.3d 282, 289, 750 N.E.2d 130. Under such circumstances, the court should apply the subsequent regulation to Doe's contract in this case, which would allow him to continue his employment but would also fulfill the overall intent of the law.

_____

**BROWN, C.J., concurring in part and dissenting in part.**

{¶ 34} I agree with the majority that R.C. Chapter 124, R.C. 3319.391, and Ohio Adm.Code 3301-20-01 do not violate the Contract Clause, Section 28, Article II of the Ohio Constitution. However, I would hold that R.C. 3319.391 violates the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution.

{¶ 35} Today the majority holds that a long-term school-district employee—a person who has successfully turned his life around and has not been in trouble for over 30 years—can be summarily fired based upon a new law that

looks back to conduct that occurred prior to his employment. Contrary to the majority's assertions, Doe's vested right to continued public employment provided him with constitutional rights, which should not be summarily denied.

{¶ 36} Therefore, I respectfully dissent from the majority's holding that R.C. 3319.391 does not violate the prohibition against retroactive laws.

**Facts**

{¶ 37} According to the order certifying the questions to this court, Doe was convicted 34 years ago for drug trafficking and spent three years in jail. That conviction was expunged in 1997.

{¶ 38} Doe obtained a bachelor's degree in 1983 and became a licensed social worker and certified chemical-dependency counselor. The federal court that is hearing this case found that Doe "has been a model citizen since being released from jail."

{¶ 39} Beginning in 1997, Doe spent five years working for the school district as a drug-free-school specialist. Doe has since worked in an administrative capacity as a hearing officer.

{¶ 40} R.C. 3319.391 was enacted, effective November 14, 2007, to expand the categories of school-district employees who were required to undergo criminal background checks. 2007 Sub.H.B. No. 190. Doe was among the employees who were newly subject to background checks.

{¶ 41} However, the statute provided that any employee whose background check revealed crimes requiring termination could avoid termination if that person met rehabilitation standards adopted by the Department of Education. R.C. 3319.391(C). Doe's 1976 conviction made him subject to termination, and under the then-existing regulations, the drug offense was a nonrehabilitative offense. Former Ohio Adm.Code 3301-20-01(E)(1)(c) and (A)(11), 2005-2006 Ohio Monthly Record 1261, eff. Sept. 23, 2005.

{¶ 42} In July 2008, Doe signed a new employment contract with the school district; the contract stated that Doe's employment was "subject to confirmation of appropriate state certification." In November 2008, the school district informed Doe that a background check had revealed his former felony and that his employment was terminated.

{¶ 43} Subsequently, the Department of Education passed regulations that would have permitted Doe to retain employment by demonstrating rehabilitation. Ohio Adm.Code 3301-20-03 (eff. Aug. 27, 2009). Had this regulation been in effect in November 2008, it is unlikely that Doe would have been fired.

{¶ 44} Doe's termination was incongruous in that had the General Assembly not passed R.C. 3319.391, Doe would not have been fired, and had the Department of Education more quickly promulgated its rule regarding rehabilitation (Ohio Adm.Code 3301-20-03), Doe would not have been fired. As noted by the federal court, Doe is a model citizen, a person who turned his life around in a remarkable and exemplary way. His life and experiences made him uniquely qualified for his service to the school district. Yet because his background check occurred during the gap between November 2007 (when R.C. 3319.391 was enacted) and August 2009 (when the Department of Education finally promulgated the rule that would allow rehabilitation for Doe's offense), Doe was terminated.

{¶ 45} Doe filed suit in state court, alleging breach of contract and violation of constitutional rights. The school district removed the case to federal court. The federal court certified questions of state law to this court concerning the constitutionality of certain state laws in effect at the time of Doe's termination. We accepted the questions.

### Law and Analysis

{¶ 46} For the majority, the analysis of whether R.C. 3319.391 violates the prohibition against retroactive laws begins and ends with Doe's 2008

employment contract. According to the majority, Doe did not have a vested right to employment, because his 2008 contract was contingent on " 'confirmation of appropriate state certification.' " Majority opinion at ¶ 18, quoting the employment contract.

{¶ 47} In order to reach this result, the majority equates passing the criminal background check required by R.C. 3319.391 with "confirmation of appropriate state certification" under Doe's employment contract. The majority springboards from this proposition to the holding that Doe did not meet the "condition precedent" in his employment contract and therefore had no "vested right" to continued employment. Without such a right, the majority concludes, the law is not unconstitutionally retroactive.

{¶ 48} I disagree with the majority's conclusion that the contract makes Doe's employment conditional on a background check. The contract does not clearly and unambiguously say that Doe would be subject to a background check and that he could be fired based on the result. It says instead that his employment is "subject to confirmation of appropriate state certification." The phrase "state certification" is ambiguous. In the context of a school-district employment contract, "certification" could as easily mean "licensed," since certain school-district jobs require licenses. See R.C. 3319.22, describing "educator licenses."

{¶ 49} Thus, the contract is ambiguous, at best, with regard to whether passing a criminal background check equates to "confirmation of appropriate state certification." In contracts, we construe ambiguities against the proponent of the instrument. *Monnett v. Monnett* (1888), 46 Ohio St. 30, 34-35, 17 N.E. 659. "Any ambiguities in the document setting forth the rights and responsibilities of each party must be construed against the drafter of the document. Otherwise the nondrafter of the document may ultimately forfeit far more than he or she reasonably contemplated at the time the agreement was signed." *Fletcher v.*

*Fletcher* (1994), 68 Ohio St.3d 464, 471, 628 N.E.2d 1343 (Resnick, J., dissenting).

{¶ 50} In light of the ambiguity, the court should not deprive Doe of his vested right to continued employment. Instead, the court should hold the ambiguity against the contract's proponent—the school district—and hold that the clause does not mean that the employee must pass a criminal background check.

{¶ 51} The majority next asserts that Doe's satisfying R.C. 3319.391 was an implied term of the employment contract because the statute was in effect before the contract was executed. In other words, the majority holds that Doe loses the ability to raise his otherwise viable constitutional right based upon terms of the contract that were added to the contract by this court by implication.

{¶ 52} I cannot agree to so casually dispose of Doe's constitutional claims through the use of a legal artifice (contract terms implied in law).

{¶ 53} This is not a proper use of the court's ability to supply implied contractual terms. The court should imply terms to prevent injustice and to conform the contract to the parties' actual intent, but not to deprive a person of his ability to enforce his constitutional rights. This is particularly true when, as here, the terms being implied are from a newly passed law and would significantly alter the contractual relationship between the parties. Accordingly, I would not find that Doe's satisfying R.C. 3319.391 was an implied term of his contract.

{¶ 54} The majority also states that R.C. 3319.391 is not retroactive because it does not go back in time and terminate Doe from the date of his initial hire or deprive him of pay and benefits that he previously acquired. But these facts are irrelevant.

{¶ 55} What is relevant is that the new law required Doe's termination from employment based on his past conduct. We have held that laws are unconstitutionally retroactive when they impair a vested right based upon prior conduct. *Smith v. Smith*, 109 Ohio St.3d 285, 2006-Ohio-2419, 847 N.E.2d 414, ¶

6. The principle is that a law cannot add new burdens to rights that are presently lawfully enjoyed, based upon events that occurred in the past. R.C. 3319.391 is such a statute.

{¶ 56} R.C. 3319.391 applies retroactively by its own terms. The statute applies to new and current employees alike and instructs that an employee whose background check discloses a proscribed felony "shall be released from employment." R.C. 3319.391(C).

{¶ 57} Our caselaw establishes that public employees, like Doe, have a vested right to continued employment. *Ohio Assn. of Pub. School Emps., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 176, 624 N.E.2d 1043. And where, as here, that vested right is impaired by a new law requiring the employee's termination based on the employee's prior conduct, the law is unconstitutionally retroactive.

### Conclusion

{¶ 58} For the foregoing reasons, I would hold that R.C. 3319.391 violated the constitutional prohibition against retroactive laws. Accordingly, I dissent from the majority's holding that R.C. 3319.391 does not violate the prohibition against retroactive laws.

PFEIFER, J., concurs in the foregoing opinion.

_____

Dinsmore & Shohl, L.L.P., Christopher R. McDowell, Kimberly Beck, and Sarah Sparks Herron, for petitioner.

Taft, Stettinius & Hollister, L.L.P., Mark J. Stepaniak, and Daniel J. Hoying, for respondents Mary Ronan and Cincinnati Public Schools.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, David M. Lieberman, Deputy Solicitor, Mia T. Meucci, Assistant Solicitor, and Amy Nash Golian and Todd R. Marti, Assistant Attorneys General, for respondent Ohio Department of Education.

Carrie L. Davis, in support of petitioner for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.

Christina M. Royer, Ltd., and Christina M. Royer; and Cynthia McGrae, in support of petitioner for amici curiae Ohio Employment Lawyers Association, Legal Aid Society of Cleveland, and Towards Employment, Inc.

_____